## DIAMOND GROUP, INC. *vs.* SELECTIVE DISTRIBUTION INTERNATIONAL, INC.

No. 12-P-864.

Middlesex. January 8, 2013. - November 25, 2013.

Present: GRAHAM, GRAINGER, & SIKORA, JJ.

*Jurisdiction,* Personal, Long-arm statute, Forum non conveniens. *Constitutional Law,* Interstate commerce. *Due Process of Law,* Jurisdiction over non-resident.

In a civil action, a Superior Court judge erred in allowing the defendant's motion to dismiss for lack of personal jurisdiction, pursuant to Mass.R.Civ.P. 12(b)(2), where the exercise of personal jurisdiction over the defendant satisfied the requirements of the long-arm statute, G. L. c. 223A, § 3, in that the defendant's voluminous, repetitive, and long running activity constituted the transaction of business in the Commonwealth within the meaning of the statute, and in that the plaintiff's claim arose from the transaction of business by the defendant; and where the exercise of personal jurisdiction over the defendant satisfied the standards of the due process clause of the Fourteenth Amendment to the United States Constitution, in that the defendant purposefully availed itself of commercial activity in the Commonwealth, the plaintiff's claim arose directly from the defendant's contacts with the Commonwealth, and the exercise of jurisdiction over the defendant did not offend traditional notions of fair play and substantial justice. [548-556] GRAINGER, J., dissenting.
This court declined to reach an issue regarding forum non conveniens that the parties had not briefed. [556]

CIVIL ACTION commenced in the Superior Court Department on October 19, 2009.

A motion to dismiss was heard by *Daniel M. Wrenn,* J.

*Scott P. Fink* for the plaintiff.

*Leonard M. Singer* for the defendant.

SIKORA, J. This appeal presents a question of the jurisdiction of the Massachusetts courts over a business corporation located exclusively in New York State. The plaintiff, Diamond Group, Inc. (Diamond), is a wholesale distributor of perfume products; its sole business location lies in Newton, Massachusetts. The

defendant, Selective Distribution International, Inc. (Selective), is a distributor of fragrances, cosmetics, and beauty aids and accessories to retailers; its sole location lies in Jericho (Long Island), New York. Diamond brought suit against Selective in Superior Court for nonpayment for goods sold and delivered. It alleged that, over a period of twenty-one months, it had sold perfume products to Selective of a value of $995,692.35, but that Selective had failed to pay a balance due of $529,689.70. Diamond pleaded claims of breach of contract, quantum meruit entitlement, and unfair or deceptive conduct within the meaning of G. L. c. 93A, §§ 2 and 11. If proven, the wrongful nonpayment for more than one-half million dollars' worth of perfume would constitute conduct in fragrante delicto.

However, this appeal does not require a decision of that ultimate question. It requires instead the determination whether the Massachusetts courts have jurisdiction to entertain the claim. In response to Diamond's complaint, Selective moved under Mass.R.Civ.P. 12(b)(2), 365 Mass. 754 (1974), to dismiss for lack of personal jurisdiction or, alternatively, forum non conveniens. After supplementation of the allegations of the verified complaint by affidavits and appended exhibits by both parties, and after submission of extensive memoranda of law, a judge of the Superior Court concluded that Massachusetts courts lacked personal jurisdiction over Selective and entered judgment of dismissal. For the following reasons, we now reverse.

*Background.* These undisputed facts emerge from the verified complaint, the parties' affidavits, and their attached exhibits. Each of the corporate parties in this case is primarily a one-man enterprise. Diamond's president, chief executive officer, and sole shareholder is Jeffrey Parker. Selective's president and director is Dennis J. Schnur. Parker and Schnur had known each other since approximately 1993. Their current businesses had engaged in the purchase and sale of products since 2000.[1]

---

[1]The record below indicates that the parties' respective locations remained Newton, Massachusetts, and Jericho, New York, throughout their relationship. It contains no evidence about the location of the negotiation of an underlying requirements or supply contract. Parker's affidavit contains the following uncontradicted description of the history of the parties' dealings.

"From 2000 through early 2008, Diamond and Selective engaged in

During the twenty-one month period of July, 2006, through April, 2008, Selective purchased perfumes and colognes from Diamond. Diamond issued to Selective seventy-nine invoices containing total charges of $995,692.35 for various itemized perfume products. The invoices recited the identities of the products delivered, the unit price of each, and the quantity of each.[2] Selective paid the amounts stated on thirty-four of the invoices, but did not pay the amounts on forty-five other invoices. The forty-five unpaid invoices account for 35,693 individual units of perfume and the sum of $529,689.70.

Selective communicated all orders to Diamond's Newton office by electronic mail (e-mail), telephone, or facsimile (collectively, electronic orders). In response to each electronic order, Diamond prepared an appropriate invoice and assigned the request a purchase order number. Therefore, the seventy-nine invoices issued by Diamond during the twenty-one month period in question represented Selective's orders for seventy-nine purchases. Physical delivery of the products occurred from sites outside Massachusetts to Selective's premises in Jericho, New York, or to an alternate site in New Jersey.

From the verified complaint, affidavits, and attached exhibits, the motion judge concluded as follows:

> "In the present action as established by the affidavit of Dennis Sch[n]ur . . . , the defendant, Selective, does no business in Massachusetts, maintains its only office in Jericho, New York, has no office, business location or representative in Massachusetts, and has a total of two employees, none of whom lives or works in Massachusetts. In addition, Selective does not own, lease, or utilize any real property in Massachusetts, has no bank accounts in Massachusetts, does not maintain any business or corporate records in Massachusetts, pays no taxes in this state, and is not registered to do business in Massachusetts. Further,

literally hundreds of transactions. During that period Diamond sometimes purchased products from Selective while other times Selective purchased product[s] from Diamond. Orders were usually placed by telephone, facsimile, or by [electronic mail]."

[2]Selective's orders spanned an array of branded fragrant sprays: Cool Water, Echo, Still by J-Lo, Glow by J.Lo, Joop, Burberry Brit, Alfred Sung, Opium, and Polo Green.

Selective has not availed itself of the Massachusetts courts in any way, and all services provided by Selective are performed in the State of New York. While Selective does purchase products from companies outside of New York, including products from the plaintiff through its Massachusetts office, those products are delivered by those companies, like the plaintiff, to Selective, outside of Massachusetts. Indeed, the invoices in this case note that the products in question are delivered to Jericho, New York.

". . .

"[T]he defendant does not have sufficient contact with the State of Massachusetts so as to afford personal jurisdiction; that is, the defendant is not transacting business in this Commonwealth sufficient to give rise to personal jurisdiction. Further, the contacts between the plaintiff and defendant are not sufficient to satisfy the requirements in order to exercise jurisdiction consistent with basic due process requirements as mandated by the United States Constitution."

*Analysis.* 1. *Procedural and evidentiary matters.* On a motion to dismiss for lack of personal jurisdiction pursuant to rule 12(b)(2), "the plaintiff[] bear[s] the burden of establishing sufficient facts on which to predicate jurisdiction over the defendant." *Good Hope Indus., Inc.* v. *Ryder Scott Co.,* 378 Mass. 1, 3 (1979). See *Droukas* v. *Divers Training Academy, Inc.,* 375 Mass. 149, 151 (1978). For purposes of reviewing the ruling on the motion to dismiss, we accept as true assertions in the plaintiff's affidavit, including any which controvert assertions in the defendant's affidavit. See *id.* at 151 & n.2. In this instance, as noted, the material jurisdictional facts established by the affidavits are undisputed. The parties contest only their legal significance.

2. *Personal jurisdiction over the defendant.* The exercise of personal jurisdiction over a nonresident defendant requires compliance with both (a) the standards of the forum State's long-arm statute, and (b) the standards of the due process clause of the Fourteenth Amendment to the United States Constitution.

See *Tatro* v. *Manor Care, Inc.*, 416 Mass. 763, 767 (1994) (*Tatro*).

a. *Long-arm statutory standard of G. L. c. 223A, § 3(a).* Pursuant to G. L. c. 223A, § 3, as amended by St. 1969, c. 623,

> "A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's
>
> "(*a*) transacting any business in this commonwealth."

Section 3(*a*) of the long-arm statute imposes two requirements: "the defendant must have transacted business in Massachusetts, and the plaintiff's claim must have arisen from the transaction of business by the defendant." *Tatro*, 416 Mass. at 767.

Our courts have interpreted the "transacting any business" clause of § 3(*a*) liberally, *Tatro*, *supra* at 767, and cases cited, and "to the limits" permitted by the United States Constitution. *Good Hope Indus., Inc.* v. *Ryder Scott Co.*, 378 Mass. at 6, citing *"Automatic" Sprinkler Corp. of America* v. *Seneca Foods Corp.*, 361 Mass. 441, 443 (1972). Broad interpretation accords with the letter of the statute. It is axiomatic that every word will receive some effect; no word is redundant or ineffectual. See *Negron* v. *Gordon*, 373 Mass. 199, 205 (1977); *Sperounes* v. *Farese*, 449 Mass. 800, 807 (2007). The section uses the word "any" before the word "business." We interpret that term to be expansive, or to mean that the volume of business need not be substantial but merely definite and perceptible. See *Foster-Miller, Inc.* v. *Babcock & Wilcox Canada*, 848 F. Supp. 271, 276 (D. Mass. 1994) (any conduct beyond the "most incidental commercial contact" is sufficient). The test is whether the defendant engaged in the intentional or purposeful conduct of business activity in the Commonwealth. See *Good Hope Indus., Inc.* v. *Ryder Scott Co.*, 378 Mass. at 6, 11; *Tatro*, 416 Mass. at 767-768; *United Elec., Radio & Mach. Wkrs.* v. *163 Pleasant St. Corp.*, 960 F.2d 1080, 1087 (1st Cir. 1992) (noting that courts look to "whether the defendant attempted to participate in the commonwealth's economic life").

Here, Selective has transacted business within the meaning of § 3(*a*). Over a period of years, the company engaged in an

intentional course of ordering large amounts of inventory from a supplier in Massachusetts.[3] Its activity was voluminous, repetitive, and long running. See *Sonesta Intl. Hotels Corp.* v. *Central Fla. Invs., Inc.*, 47 Mass. App. Ct. 154, 161 (1999) (defendant transacted business under § 3[*a*] where "there were numerous telephone and written communications sent from the defendant in Florida to the plaintiff in Massachusetts over the course of time"); *Fairview Mach. & Tool Co.* v. *Oakbrook Intl., Inc.*, 56 F. Supp. 2d 134, 138 (D. Mass. 1999) (defendants transacted business under § 3[*a*] where they "sent substantial correspondence, including approximately $1,500,000, into the Commonwealth" in connection with an agreement to purchase machinery from a Massachusetts corporation). The defendant's activity certainly cannot qualify as "an isolated (and minor) transaction with a Massachusetts resident."[4] *Tatro*, 416 Mass. at 767.

The parties' course of dealing met also the second statutory requirement of § 3(*a*). The "arising from" clause of G. L. c. 223A, § 3, poses a "but for" test. *Tatro, supra* at 770-771. Here, "but for" Selective's purchase of inventory from Diamond and its breach of the integral duty of payment, Diamond would not have suffered injury.

A third consideration strengthens the reach of the statute. In *Carlson Corp.* v. *University of Vt.*, 380 Mass. 102 (1980), the court reasoned that "where a contract is made in this State and a cause of action arises out of such contract, the consummation

---

[3]We cannot credit Selective's argument that it was unaware that Diamond was located in Massachusetts. While Diamond was not registered as a Massachusetts corporation during the parties' dealings, the invoices sent to Selective from Diamond indicated that Diamond was located in Newton, Massachusetts; Selective made payments to Diamond in Massachusetts; the parties had a course of dealing from at least 2000, during which Diamond's principal place of business remained constant; and Selective's president and director, Dennis Schnur, admitted that he had met Diamond's president, Jeffrey Parker, in Massachusetts for dinner on a few occasions. Selective clearly knew that it was dealing with a Massachusetts business. See *Burger King Corp.* v. *Rudzewicz*, 471 U.S. 462, 480-481 (1985).

[4]Even an isolated transaction, while likely insufficient under due process standards, may satisfy the purely statutory "transacting any business" requirement. See *Good Hope Indus., Inc.* v. *Ryder Scott Co.*, 378 Mass. at 8 n.13; *Bond Leather Co.* v. *Q.T. Shoe Mfg. Co.*, 764 F.2d 928, 932 (1st Cir. 1985).

of the contract in [the forum State] constitutes the transaction of business or the minimum contacts necessary to invoke personal jurisdiction." *Id.* at 106, quoting from *Iroquois Gas Corp.* v. *Collins*, 42 Misc. 2d 632, 634-635 (N.Y. Sup. Ct. 1964).

As an arrangement for the purchase and sale of goods, the agreements here fell within the scope of art. 2 of the Uniform Commercial Code (UCC). See G. L. c. 106, § 2-102 ("[T]his Article applies to transactions in goods"). Pursuant to G. L. c. 106, § 2-206(1)(*b*), "an order or other offer to buy goods for prompt or current shipment shall be construed as inviting acceptance either by a prompt response to ship or by the prompt or current shipment of conforming or non-conforming goods." Diamond routinely accepted Selective's offers to buy by transmittal of an invoice acknowledging Selective's offer to purchase and effectively promising to ship. See *Roto-Lith, Ltd.* v. *F.P. Bartlett & Co.*, 297 F.2d 497, 499 (1st Cir. 1962) (noting that under § 2-206 of the UCC, "mailing the acknowledgment would clearly have completed the contract in Massachusetts by acceptance had the acknowledgment not sought to introduce new terms").[5]

Two weaknesses undermine the motion judge's analysis and conclusion that Selective's activity did not fall within the grasp of the long-arm statute. First, it focuses almost solely upon the facts demonstrating Selective's absence from Massachusetts and omits any reference to its positive business connection with the Commonwealth. It makes no mention of the seventy-nine purchase orders placed with Diamond in Massachusetts by electronic communication, the $995,692.35 value of the products delivered, or the payment of approximately $466,000 to Diamond for goods received. In short, it omits the undisputed fact that

---

[5]Section 2-207 of the UCC further supports the transmittal of the invoice as the acceptance of an offer. Under that provision, also known as the "battle of the forms" section, "(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms." See *Commerce & Indus. Ins. Co.* v. *Bayer Corp.*, 433 Mass. 388, 392-393 (2001). In our case, the contract between the parties materialized upon the dispatch by Diamond of the invoices confirming without change the acceptance of Selective's respective purchase orders.

Selective regularly ordered substantial amounts of inventory from a Massachusetts supplier.

The second flaw is the concentration on the lack of Selective's physical contacts with the Commonwealth. While Selective may not have entered the Commonwealth physically, it maintained an ongoing pattern of electronic contact with the Commonwealth by placing numerous telephone, facsimile, and electronic mail orders for large quantities of products. As the Supreme Judicial Court observed almost thirty-five years ago, "Modern technology has taken us far beyond the point where two [persons] must stand in each other's physical presence to transact business. Widespread use of the telephone and the mails make[s] actual physical presence unnecessary in many cases." *Good Hope Indus., Inc.* v. *Ryder Scott Co.*, 378 Mass. at 11 (citation omitted). This statement applies all the more forcefully today as commercial activity proceeds far more dominantly by electronic communication.[6]

b. *Due process.* For determination whether an exercise of personal jurisdiction satisfies due process, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State." *Burger King Corp.* v. *Rudzewicz*, 471 U.S. 462, 474 (1985). This analysis requires the plaintiff to demonstrate (1) purposeful availment of commercial activity in the forum State by the defendant; (2) the relation of the claim to the defendant's forum contacts; and (3) the compliance of the exercise of jurisdiction with "traditional notions of fair play and substantial justice." *Bulldog Investors Gen. Partnership* v. *Secretary of the Commonwealth*, 457 Mass. 210, 217 (2010), and cases cited. See *Tatro*, 416 Mass. at 772-773, and cases cited. The third element is essentially a test of fairness measuring (a) the burden upon the defendant of appearance in the forum State litigation; (b) the interest of the plaintiff in the availability of accessible adjudication of a grievance; and (c) the interest of the forum State in the provision of legal process to its residents. *Bulldog Investors Gen. Partnership* v. *Secretary of the Commonwealth*, supra at 218, citing *Burger King Corp.* v. *Rudzewicz*, supra at 467-477. See *Tatro*, 416 Mass. at 773.

---

[6]For this reason, the emphasis of our dissenting colleague upon physical presence in the Commonwealth (*post* at 560-562) fails to push through the undertow of outmoded precedent.

First, Selective has satisfied the "purposeful availment" requirement. For twenty-one months it continuously purchased substantial amounts of inventory from a supplier located in Massachusetts and assumed the concomitant obligation to pay for the inventory. It directed numerous electronic communications into the Commonwealth to specify the material terms of orders for more than $995,000 worth of products, and sent payments to Diamond in the amount of more than $466,000. See *Good Hope Indus., Inc.* v. *Ryder Scott Co.*, 378 Mass. at 11 (finding purposeful availment where the defendant sent appraisal reports and initiated numerous telephone calls to the plaintiffs at their headquarters in Massachusetts); *Sonesta Intl. Hotels Corp.* v. *Central Fla. Invs., Inc.*, 47 Mass. App. Ct. at 160-162 (purposeful availment where the defendant placed telephone calls and purchase orders with the plaintiffs in Massachusetts and sent payments and periodic reports); *Buctouche Fish Mkt., Ltd.* v. *City Sea Foods, Inc.*, 735 F. Supp. 441, 443 (D. Mass. 1990) (upholding jurisdiction where the out-of-State defendant purchased large quantities of lobsters from Massachusetts suppliers); *Fairview Mach. & Tool Co.* v. *Oakbrook Intl., Inc.*, 56 F. Supp. 2d at 139-140 (purposeful availment where, pursuant to an agreement to purchase approximately two million dollars' worth of machinery from the plaintiff, the defendants "exchanged multiple telephone calls, [facsimilies] and letters" with the plaintiff in Massachusetts). As the United States Supreme Court has stated, "[W]here the defendant 'deliberately' has . . . created 'continuing obligations' between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by 'the benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Burger King Corp.* v. *Rudzewicz*, 471 U.S. at 475-476 (citations omitted).[7]

With respect to the second requirement, as discussed above in

___

[7]Massachusetts jurisdiction would afford Selective countervailing benefits, as well. If Diamond were to breach an agreement for sale and delivery of goods, Selective could employ the Commonwealth's courts to sue for damages or specific performance and for pre- and postjudgment remedies against the property of Diamond, such as attachments, injunctions, and liens.

the statutory analysis, Diamond's claim arose directly from Selective's contacts with Massachusetts.

Finally, the exercise of jurisdiction over Selective does not offend "traditional notions of fair play and substantial justice." *International Shoe Co.* v. *Washington,* 326 U.S. 310, 316 (1945) (citation omitted). First, the burden on Selective of appearance in court in an adjacent State from which it has acquired inventory and in which it has acquired a substantial debt is neither onerous nor surprising. Second, as a Massachusetts resident, Diamond is entitled to accessible legal process in the Commonwealth for assertion of its claim. Third, the Commonwealth has a "manifest interest" in providing a convenient forum to residents asserting good faith and objectively reasonable claims for relief. See *Tatro,* 416 Mass. at 773, citing *Burger King Corp.* v. *Rudzewicz, supra* at 473. In sum, the exercise of jurisdiction over Selective is neither unfair nor unreasonable. It complies with the requirements of G. L. c. 223A, § 3(*a*), and due process.

c. *Vendor vs. purchaser distinction.* Several cases express the concern that the exposure of nonresident purchasers to Massachusetts long-arm jurisdiction might operate oppressively and discourage out-of-State buyers from business activity with Commonwealth entities. See, e.g., *Good Hope Indus., Inc.* v. *Ryder Scott Co.,* 378 Mass. at 9 n.14; *New Hampshire Ins. Guar. Assn.* v. *Markem Corp.,* 424 Mass. 344, 349-350 (1997); *Whittaker Corp.* v. *United Aircraft Corp.,* 482 F.2d 1079, 1085 (1st Cir. 1973). However, the exercise or rejection of jurisdiction on long-arm and due process grounds has depended not narrowly on the role of purchaser or vendor, but instead broadly on an evaluation of the nonresident's quantity and quality of contacts with the Commonwealth. The evaluation is intensely circumstantial. *Good Hope Indus., Inc.* v. *Ryder Scott Co., supra* at 2; *Windsor* v. *Windsor,* 45 Mass. App. Ct. 650, 652 (1998).

The cases typifying the rejection of jurisdiction have involved isolated or incidental purchases by a nonresident defendant. See, e.g., *"Automatic" Sprinkler Corp. of America* v. *Seneca Foods Corp.,* 361 Mass. at 441 (purchase of a single machine from the plaintiff in Massachusetts); *New Hampshire Ins. Guar. Assn.* v. *Markem Corp.,* 424 Mass. at 348-349 (purchase of

insurance policies in the defendant's home State from a company headquartered in Massachusetts); *Moelis* v. *Berkshire Life Ins. Co.*, 451 Mass. 483, 488 (2008) (purchase of a single insurance policy from a Massachusetts company through agents in the nonresident's home State); *Nichols Assocs.* v. *Starr*, 4 Mass. App. Ct. 91, 96-97 (1976) (contact "limited to the defendant's acceptance of services which the plaintiff simply chose to perform in Massachusetts").[8]

Decisions sustaining jurisdiction have assessed the volume and value of the nonresident purchaser's transactions or dealings. See *Carlson Corp.* v. *University of Vt.*, 380 Mass. at 106-107 (single transaction of large value); *Sonesta Intl. Hotels Corp.* v. *Central Fla. Invs., Inc.*, 47 Mass. App. Ct. at 160-163 (Massachusetts plaintiffs provided various marketing services to the defendant from Boston); *Buctouche Fish Mkt., Ltd.* v. *City Sea Foods, Inc.*, 735 F. Supp. at 443 (nonresident defendant purchased large quantities of lobster from the plaintiff); *Fairview Mach. & Tool Co.* v. *Oakbrook Intl., Inc.*, 56 F. Supp. 2d at 136-137 (defendants contracted to purchase almost two million dollars' worth of machinery from the plaintiff).

In sum, under both statutory and constitutional standards, the duration, volume, and value of Selective's dealings negate the characterization of it as an "archetypal passive purchaser" unfairly hauled into the distant courts of the Commonwealth (*post* at 557, 560-562), and therefore likely to be discouraged from further engagement with Massachusetts suppliers (*post* at 563-564). Seventy-nine purchase orders and resulting shipments establish Selective as an extraordinarily deliberate, regular, and active "passive purchaser." No precedent goes so far as to say that such a sustained course of transactions falls short of the quality and quantity of business activity required by the long-arm

---

[8]See also *Whittaker Corp.* v. *United Aircraft Corp.*, 482 F.2d at 1084-1085 ("passive purchaser[]" who merely places an order and awaits delivery should not be subject to jurisdiction; concern about discouragement of nonresident engagement in transactions with resident entities); *L & P Converters, Inc.* v. *H.M.S. Direct Mail Serv., Inc.*, 634 F. Supp. 365, 365-367 (D. Mass. 1986) (defendant "passive[ly]" purchased paper from the plaintiff in approximately forty separate transactions of total value of approximately $220,000; adequate long-arm contact; inadequate due process contact).

statute and due process.[9] The continuous contractual purchase of essential inventory from a vendor in the forum State amounts to the purposeful availment of business activity and of the applicable law of that State. Long-arm statutes frequently have reached nonresident vendors sending goods and services into the forum State. However, no formal or principled distinction separates purchasers from vendors under the statute. The controlling standard is the neutral test of "transacting any business." The purchase of necessary inventory is the transaction of such business. Finally, while physical presence may deepen the basis of jurisdiction, the transactions remain its critical source.

3. *Forum non conveniens issue.* As a third, independent ground for dismissal, Selective argued below that a preexisting Federal lawsuit in the Southern District of New York constituted the convenient forum for decision of this dispute. Selective's argument is that the existing claims between the two parties in that case would necessarily resolve the dispute over payment asserted in the Massachusetts case.

Under G. L. c. 223A, § 5, "[w]hen the court finds that in the interest of substantial justice the action should be heard in another forum, the court may stay or dismiss the action in whole or in part on any conditions that may be just." The motion judge never reached the forum non conveniens issue because he decided the dismissal motion on the basis of jurisdiction.

Neither party has fully briefed the forum non conveniens issue for this appeal. Consequently, we do not reach it.[10] The forum non conveniens argument remains available in the case as now remanded to the Superior Court.[11]

*Conclusion.* Selective is properly subject to personal jurisdic-

[9]No case invoked by the dissent involves such an ongoing train of dealing.

[10]In any event, after inspecting the verified copies of certain Federal court pleadings included in the Superior Court affidavits, we are not satisfied that the excerpts from the pleadings in the Federal litigation provide a description of its status sufficiently full or current to enable us to conclude that the Federal lawsuit would be a preferable alternative forum for presentation of Diamond's claim for damages.

[11]In the Federal litigation, Zino Davidoff SA *vs.* Selective Distribution International, Inc., Diamond Group, Inc., J & H Cosmetics, Ltd., and Helene Schmeltzer & Gerald Schmeltzer, individually and doing business as J & S Merchandising and jerryboy57, U.S. Dist. Ct., No. 07 Civ. 10326 (S.D.N.Y.), the plaintiff, Zino Davidoff SA, as the alleged creator of valuable trademarked

tion in Massachusetts. Accordingly, we reverse the judgment of dismissal and remand to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*

GRAINGER, J. (dissenting). This defendant presents all the characteristics of an archetypal passive purchaser, and none to the contrary. In my view the judge was correct in his determination that we cannot properly assert personal jurisdiction over the defendant in Massachusetts.

*Factual background.* A buyer in New York (Selective) entered into an agreement with a seller incorporated in Nevada (Diamond) whose principal (Jeffrey Parker) worked and resided in Massachusetts to have perfume, located in a warehouse in New Jersey, delivered within New Jersey and to New York. Of the States connected, however tangentially, to this commercial arrangement, two can easily be determined to have personal jurisdiction over the defendant: (1) New York, where the defendant was located and accepted shipments, and (2) New Jersey, where the goods were stored and the defendant also accepted

fragrances, has charged the defendants, including Selective and Diamond, with the distribution and sale of counterfeit fragrances under the Davidoff trademark in violation of multiple Federal statutory and common-law standards. Selective, in turn, has brought a third-party complaint charging Diamond with the sale to Selective of such counterfeit products, and Diamond has brought a third-party complaint against the other defendants. The lawsuit originated in 2007. Selective argues here that, if in the Federal suit it establishes Diamond's liability for supply of counterfeit products, its recovery against Diamond will more than set off any liability claimed by Diamond for unpaid deliveries asserted in the present Massachusetts litigation.

Two considerations prevent our acceptance of that position. The first is the uncertain status of the Federal litigation at this moment. The second is the fact visible in our record that the Davidoff product (Cool Water) was only one of six sold by Diamond to Selective in the shipments disputed in the Massachusetts litigation. The unpaid invoices included in our record show the dollar value of the Davidoff product to approximate only thirty-eight percent of the value of the aggregate unpaid products. Selective's assertion that resolution of the Federal case could or would resolve the dispute over liability and damages in the Massachusetts case remains speculative on the present record. If that circumstance changes, the parties remain free to bring it to the attention of a Superior Court judge. Such judge remains free to exercise his or her discretion under G. L. c. 223A, § 5.

shipments. Massachusetts, by contrast, the State in which the seller chose to reside and conduct a long-distance brokerage business, was irrelevant to any of the business activity at issue. On this record I cannot conclude that the defendant transacted business here, much less that it "purposefully avail[ed]" itself of the "benefits and protections" of Massachusetts law. *Tatro* v. *Manor Care, Inc.*, 416 Mass. 763, 772 (1994).

Our consideration should begin with the fact that no goods transferred between the parties ever entered the Commonwealth pursuant to any dealings between them. The plaintiff's attempts to trace some of the perfumes through interstate commerce to eventual retail destinations at a later date only emphasizes that fact.[1]

The parties made a straightforward agreement for the delivery of products to the defendant's places of business. The agreement was neither negotiated in Massachusetts nor subjected to any change or renegotiation after formation, here or elsewhere. The plaintiff does not dispute that the parties' only contact in Massachusetts was on a social basis between the principals, Diamond's chief executive officer, Parker, and Selective's president, Dennis J. Schnur, on one or two occasions, and not until some five or six years after their commercial relationship had been established.[2]

It is worth repeating the judge's findings, already set forth in the majority opinion, as they have full support in the record:

"In the present action as established by the affidavit of

---

[1] In seeking to bolster its jurisdictional claim, the plaintiff claimed that the defendant resold some of the products it purchased from the plaintiff to CVS and that CVS, in turn, placed some of those products in its stores, including in Massachusetts. The judge found that allegation to be unsupported and, in any event, irrelevant to the jurisdictional issue.

[2] The plaintiff characterizes the dealings between the parties as consisting of seventy-nine wholly separate contracts, while the defendant argues that there was only a single "forecast order" from which all of the invoices were generated. The defendant further notes that the prices for each item remained the same throughout the period encompassed by the plaintiff's complaint. While I view the plaintiff's argument as unrealistic and self-serving, it is to be considered true for purposes of deciding the motion to dismiss. Portraying each invoice as a separate contract, however, is irrelevant to determining whether the defendant availed itself of the benefit of "doing business" in Massachusetts. See *infra*.

Dennis Sch[n]ur . . . , the defendant, Selective, does no business in Massachusetts, maintains its only office in Jericho, New York, has no office, business location or representative in Massachusetts, and has a total of two employees, none of whom lives or works in Massachusetts. In addition, Selective does not own, lease, or utilize any real property in Massachusetts, has no bank accounts in Massachusetts, does not maintain any business or corporate records in Massachusetts, pays no taxes in this state, and is not registered to do business in Massachusetts. Further, Selective has not availed itself of the Massachusetts courts in any way, and all services provided by Selective are performed in the State of New York. While Selective does purchase products from companies outside of New York, including products from the plaintiff through its Massachusetts office, those products are delivered by those companies, like the plaintiff, to Selective, outside of Massachusetts. Indeed, the invoices in this case note that the products in question are delivered to Jericho, New York."

*Discussion.* 1. *Long-arm jurisdiction.* As stated, I am dubious that the defendant can accurately be said to have "done business" in the Commonwealth by simply engaging in a long-distance commercial relationship with a Massachusetts resident. But, even if one were to accept that characterization, the judge's decision below was clearly correct in my view because the due process requirements of the Fourteenth Amendment to the United States Constitution, as elaborated by the United States Supreme Court, are lacking in this case.[3]

2. *Due process.* In order for the assertion of Massachusetts jurisdiction to survive a due process challenge, the plaintiff must demonstrate that the defendant purposely participated in

[3]Elements of a transaction that satisfy long-arm jurisdiction do not consequentially support the separate requirements of due process. Innumerable cases have found that a commercial relationship met conditions for the former but failed to satisfy the latter. See, e.g., *REMF Corp.* v. *Miranda*, 60 Mass. App. Ct. 905, 906-907 (2004); *Bond Leather Co.* v. *Q.T. Shoe Mfg. Co.*, 764 F.2d 928, 933-935 (1st Cir. 1985); *L & P Converters, Inc.* v. *H.M.S. Direct Mail Serv., Inc.*, 634 F. Supp. 365, 366 (D. Mass. 1986); *Litchfield Financial Corp.* v. *Buyers Source Real Estate Group*, 389 F. Supp. 2d 80, 88-89 (D. Mass. 2005).

commercial activity within the borders of Massachusetts so that the defendant can be said to have taken advantage of the "benefits and protections" of its presence here. See *International Shoe Co.* v. *Washington*, 326 U.S. 310, 319 (1945). The established jurisdictional test of "traditional notions of fair play and substantial justice" is based on a principle of reciprocity between benefits and obligations. See *Sawtelle* v. *Farrell*, 70 F.3d 1381, 1389 (1st Cir. 1995) (citation omitted) ("the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws").

In the vast majority of cases, including this one, a vendor can decide whether to introduce products or services into a particular jurisdiction. As this case also illustrates, a purchaser normally selects a particular product or service, and then receives it from whatever jurisdiction the vendor has chosen as a place of business. For this reason, our law recognizes that the vendor-purchaser distinction is crucial to a due process "availment of benefits" analysis. Here, the plaintiff's storage of goods in New Jersey, and its transfer of goods both within New Jersey and to New York, is in stark contrast with the location from which it has chosen, as a broker, to manage these transfers and generate invoices. The defendant obviously participated in the commercial activity taking place in New York and New Jersey, but had no role and no interest in the fact that the plaintiff directed its own activities from Massachusetts.

A review of the cases cited by the majority that have imposed personal jurisdiction in Massachusetts over a nonresident purchaser is instructive. In each case the purchaser's physical presence in Massachusetts by choice was the due process linchpin on which the proper exercise of jurisdiction turned.[4] See *Whittaker Corp.* v. *United Aircraft Corp.*, 482 F.2d 1079, 1082-1085 (1st Cir. 1973) (contrasting passive and active purchasers where

---

[4]Several of these decisions address the volume and financial value of business dealings in the context of our long-arm statute where the defendant was present in the State, but do not consider those factors with respect to due process. See, e.g., *Carlson Corp.* v. *University of Vt.*, 380 Mass. 102, 105 (1980) (contract signing in Massachusetts "culmination of months of negotiations"); *Fairview Mach. & Tool Co.* v. *Oakbrook Intl., Inc.*, 56 F. Supp. 2d 134 (D. Mass. 1999).

jurisdiction was imposed over a defendant that came to Massachusetts to supervise the plaintiff's work — while jurisdiction simultaneously was adjudged lacking over defendants who did not come to Massachusetts during contract formation and whose later contacts were deemed "ancillary" to the placement of orders). See also *Carlson Corp.* v. *University of Vt.,* 380 Mass. 102, 105-106 (1980) (defendant came to Massachusetts to execute the contract); *Buctouche Fish Mkt., Ltd.* v. *City Sea Foods, Inc.,* 735 F. Supp. 441, 442-443 (D. Mass. 1990) (one defendant was more than simply a purchaser, as it both bought and resold seafood in Massachusetts; the other defendant, a purchaser only, sent representatives to Massachusetts to meet with suppliers); *Fairview Mach. & Tool Co.* v. *Oakbrook Intl., Inc.,* 56 F. Supp. 2d 134, 139 (D. Mass. 1999) (defendants' representatives visited Massachusetts on at least two occasions during construction to inspect the progress of ordered machinery). Finally, in *Sonesta Intl. Hotels Corp.* v. *Central Fla. Invs., Inc.,* 47 Mass. App. Ct. 154, 160-162 (1999), it was undisputed that the plaintiff would perform the services contemplated under the parties' contract in Boston. In that case we found it important that the defendant initiated a relationship that, by its nature, would require multiple future contacts in Massachusetts with the plaintiff.[5]

The contrast between these cases and the instant one need not be belabored. Other than placing orders and remitting payment to Diamond — activities that have always been found to be indicative of the "passive purchaser" under our case law — Selective had no contact with Massachusetts. Indeed, it was of no consequence to either party's rights or obligations under the contract that the plaintiff's principal, Parker, resided in Massachusetts (but was not registered to do business here) while his company, Diamond, remained incorporated in Nevada for the

---

[5]The importance of a defendant's intent is well expressed in *United Elec., Radio & Mach. Wkrs.* v. *163 Pleasant St. Corp.,* 960 F.2d 1080, 1087 (1st Cir. 1992) (recognizing that the test is "whether the defendant *attempted to participate* in the commonwealth's economic life" [emphasis added]). See *Telco Communications, Inc.* v. *New Jersey State Firemen's Mut. Benefit Assn.,* 41 Mass. App. Ct. 225, 230-231 (1996) (where the controversy centered in out-of-State activities, the defendant did not avail itself of the privilege of conducting business in Massachusetts).

entire period at issue.[6] In short, this case fails the elementary due process test best enunciated by the United States Court of Appeals for the First Circuit: "[T]he claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities." *Pritzker* v. *Yari*, 42 F.3d 53, 60 (1st Cir. 1994), cert. denied, 514 U.S. 1108 (1995), quoting from *United Elec., Radio & Mach. Wkrs.* v. *163 Pleasant St. Corp.*, 960 F.2d 1080, 1089 (1st Cir. 1992).[7]

Finally, I cannot agree with the relevance assigned by the plaintiff to the number of invoices, which simply accompanied transfers within New Jersey or shipments from New Jersey to New York, during the contract period. Case law has rejected, correctly in my view, the assignment of significance to a purely quantitative argument in a due process analysis. See *L & P Converters, Inc.* v. *H.M.S. Direct Mail Serv., Inc.*, 634 F. Supp. 365, 366 (D. Mass. 1986) (lack of jurisdiction over a foreign defendant where a four-year commercial relationship with an in-State plaintiff involving approximately forty separate transactions failed to satisfy due process). As stated, the significance placed on the frequency of such activity must depend, first and foremost, on the jurisdictional relevance of any one instance.[8]

---

[6]Indeed, Diamond registered to do business in Massachusetts only after initiating this litigation. Even then, it registered only as a foreign corporation, which can explain the defendant's assertion (irrelevant in any event to the question of availment) that, despite the return address on the plaintiff's invoices, Schnur did not believe he was purchasing perfume from a Massachusetts business.

[7]The assertion that technological advances of the past several decades require an expanding concept of "forum State activities" is misdirected here. Technology has rendered physical presence, previously an important factor to determine whether a party has entered the jurisdiction for long-arm analysis, less central to the definition of "doing business." But this falls far short of a justification to dilute the due process protection of the Fourteenth Amendment where availment is wholly lacking. In any event, there is no claim in this case that the defendant utilized technology as a substitute for physical presence as, for example, maintaining a Web site accessible to Massachusetts residents. The purpose of the interstate communications, initiated not by the defendant but by the plaintiff, was simply billing and payment.

[8]It is not disputed that the defendant merely responded to the plaintiff's election to send invoices from Parker's home and office in Newton rather than billing the defendant FOB or COD New Jersey, or COD New York. In order to satisfy due process requirements, the defendant's contacts with the forum State must be voluntary — that is, not based on the "unilateral activity of another party or a third person." *Burger King Corp.* v. *Rudzewicz*, 471 U.S.

The assertion that the defendant availed itself of the "benefits and protections" of Massachusetts by receiving seventy-nine invoices mailed from the Commonwealth at the plaintiff's sole election and paying those that were uncontested does not withstand scrutiny.

The crucial due process defect in the plaintiff's claim of jurisdiction is that it has not shown that the defendant benefited in any way from the protections of Massachusetts law. "Even if a defendant's contacts with the forum are deemed voluntary, the purposeful availment prong of the jurisdictional test investigates whether the defendant benefitted from those contacts." *Phillips Exeter Academy* v. *Howard Phillips Fund, Inc.*, 196 F.3d 284, 292 (1st Cir. 1999) (concluding that purposeful availment was lacking where the defendant's only pertinent contacts with the forum were remittance of annual payments to the plaintiff "and there [was] not so much as a hint that the [defendant] benefitted in any way from the protections of [forum State] law in making these payments").

3. *Policy considerations.* It should be noted as well that assertion of jurisdiction under these circumstances, while ostensibly favorable to this particular Massachusetts plaintiff, is contrary to established legislative policy underlying our long-arm statute. See *New Hampshire Ins. Guar. Assn.* v. *Markem Corp.*, 424 Mass. 344, 350 (1997) ("Potential buyers would be discouraged from dealing with our suppliers, if the kinds of contacts [the plaintiff] relies on here were sufficient to allow such purchasers to be hauled by Massachusetts vendors into Massachusetts courts"). See also *Good Hope Indus., Inc.* v. *Ryder Scott Co.*, 378 Mass. 1, 9 n.14 (1979) (interpreting § 3[*a*] of the long-arm statute to permit jurisdiction over all nonresident purchasers "would have promoted the unwanted result of discouraging foreign purchasers from dealing with resident sellers for fear of having to engage in litigation in distant courts"); *Whittaker Corp.* v. *United Aircraft Corp.*, 482 F.2d at 1085 ("[T]he inter-

462, 475 (1985), quoting from *Helicopteros Nacionales de Colombia, S.A.* v. *Hall,* 466 U.S. 408, 417 (1984).

Likewise, the plaintiff could decide whether to bill monthly, sporadically, or on each occasion that goods were delivered. Frequent billing of an out-of-State party does not create jurisdiction any more than quarterly or sporadic billing necessarily defeats it.

est of the forum in not discouraging foreign purchasers from dealing with resident sellers for fear of having to engage in litigation in distant courts undercuts" an interpretation of the long-arm statute permitting jurisdiction over everyone who enters into a manufacturing agreement with a resident of the forum); *L & P Converters, Inc.* v. *H.M.S. Direct Mail Serv., Inc.*, 634 F. Supp. at 366 (defendant was a "classic passive purchaser" where it "ha[d] done nothing to participate in the Massachusetts economy beyond placing . . . [telephone] orders from New York").

For these reasons I consider the characterization of this defendant as having had a presence in Massachusetts that satisfies due process fairness requirements to be incorrect, and altogether inconsistent with commercial reality. I respectfully dissent, and conclude the judgment below should be summarily affirmed.