Leibensperger, Edward P., J.
Defendants sold their company, based in Florida, to plaintiff Alere, Inc., a company headquartered in Massachusetts, pursuant to a written Membership Interest Purchase Agreement (“Purchase Agreement”). Alere now alleges that defendants breached their obligations under the Purchase Agreement by violating a noncompetition covenant. Defendants move, pursuant to Mass.R.Civ.P. 12(b)(2), to dismiss contending that the court lacks personal jurisdiction over them or, in the alternative, that the dismissal is warranted under the doctrine offorum non conveniens. For the reasons stated below, defendants’ motion is DENIED.
FACTS
“On a motion to dismiss for lack of personal jurisdiction pursuant to rule 12(b)(2), ‘the plaintiffl] bear[s] the burden of establishing sufficient facts on which to predicate jurisdiction over the defendant.’ ” Diamond Group, Inc. v. Selective Distribution Intern., Inc., 84 Mass.App.Ct. 545, 548 (2013) (citations omitted). The court is to accept as true assertions in the plaintiffs *134 affidavit, including any which controvert assertions in the defendant’s affidavit. Id. In this case, the facts as submitted in the complaint and the affidavits submitted by both sides are not materially in dispute.
The Purchase Agreement was entered into on November 23, 2011. Alere acquired Arriva Medical, LLC (“Arriva”) by the purchase of all of the membership interests in the LLC for a price of approximately $80 million.[3] Defendants, David Wallace and Timothy Stocksdale, were .the founders of Arriva. At the time of the acquisition, they owned over 68% of Arriva through two holding companies. Wallace and Stocksdale each received over $20 million from the sale of Arriva to Alere, plus approximately $13 million in Alere stock.
Both Wallace and Stocksdale had numerous communications with Alere in connection with discussing, negotiating and closing the acquisition. Those communications were by telephone, conference call and email. Throughout those communications, Alere representatives were located in Massachusetts while Wallace and Stocksdale were located in Florida. In addition, legal counsel for Wallace and Stocksdale communicated frequently, by telephone, conference calls and email, with Alere representatives and Alere’s counsel, located in Boston. Throughout those communications, the representatives of Wallace and Stocksdale were in Florida and the Alere representatives were in Massachusetts.
The result of the negotiations and communications was the execution of the Purchase Agreement. The Purchase Agreement mandated that the closing of the transaction “will take place at the offices of Foley Hoag LLP . . . Boston, Massachusetts.” At the closing, Wallace and Stocksdale were paid approximately $17 million, with the remainder paid into escrow. The payments came from Alere’s bank account in Massachusetts. The closing was a virtual closing in that it was conducted by electronic exchanges of the required documentation and signatures. Wallace and Stocksdale did not come to Boston for the closing. Wallace and Stocksdale, in their corporate and personal capacities, signed the Purchase Agreement.
The Purchase Agreement contains a choice of law provision. The parties agreed that “all matters arising out of or relating to this Agreement and any of the transactions contemplated hereby, including the validity hereof and the rights and obligations of the parties hereunder, shall be construed in accordance with and governed by the laws of The Commonwealth of Massachusetts . . .” Purchase Agreement, §12.9. The Purchase Agreement does not contain a forum selection provision.
In connection with the acquisition, Wallace and Stocksdale entered into employment agreements with Arriva. Wallace was to serve as president of Arriva and Stocksdale was executive vice president. Wallace and Stocksdale remained employed by Arriva until December 31, 2013. During the period of 2011 to 2013, Wallace and Stocksdale, as officers of a subsidiary of Alere, regularly communicated with corporate executives at Alere. Again, the communications were by telephone and email. Wallace and Stocksdale did not come to Massachusetts to meet with Alere.
The Purchase Agreement contains a noncompetition provision. Wallace and Stocksdale agreed that for a period of five years from the closing date, they would not, directly or indirectly, compete with the business of Arriva. In addition, post-closing employment agreements between Arriva (now a subsidiary of Alere), on the one hand, and Wallace and Stocksdale, on the other hand, were entered into on the same date as the Purchase Agreement. The employment agreements contain a provision obligating Wallace and Stocksdale not to compete with Arriva (or any other Alere group company) for a period of one year after the termination of their employment with Arriva.
The complaint alleges that in 2014, a new company formed by Wallace and Stocksdale acquired certain business units from a company in Chapter 11 bankruptcy called Liberty Healthcare Group. One or more of the business units acquired by Wallace and Stocksdale through their new company, Liberty Medical, LLC, competes directly with Arriva’s business.
As referenced above, there is no evidence that either Wallace or Stocksdale ever traveled to Massachusetts in connection with the purchase of Arriva or their employment by Arriva after Alere’s acquisition. Wallace and Stocksdale are both Florida residents. Arriva’s headquarters were, at all times relevant to this matter, in Florida. While employed by Arriva, Wallace and Stocksdale received payments of salary and other employment benefits from Arriva in Florida. Other than a vacation home in Massachusetts owned by Wallace, Wallace and Stocksdale own no property in Massachusetts and do not maintain a bank account, office or business in Massachusetts.
ANALYSIS
The question presented by this motion is whether individuals who enter into a contract for the sale of their business to a Massachusetts based company, where the contract contains continuing obligations by the individuals not to compete with the company, subject themselves to personal jurisdiction in Massachusetts courts for a claim of alleged breach of their obligations. Neither side in this dispute could find case precedent addressing that specific question. As a result, the question must be resolved by the application of general principles of Massachusetts law.
For a Massachusetts court to exercise jurisdiction over the individual defendants “there must be a statute authorizing jurisdiction and the exercise of jurisdiction must be ‘consistent with basic due process requirements mandated by the United States Constitution.’ ” Bulldog Investors Gen. Partnership v. Secretary of the Commonwealth 457 Mass. 210, 215 (2010), citing Intech, Inc. v. Triple “C” Marine Salvage, Inc., 444 *135 Mass. 122, 125 (2005), quoting Tatro v. Manor Care, Inc., 416 Mass. 763, 767 (1994). The statutory and constitutional issues are to be analyzed separately. Id. Once jurisdiction is challenged, the plaintiff bears the burden of production as to the requisite jurisdictional facts. Id. at 219. The plaintiffs burden is one of production, not persuasion, as the court takes specific facts alleged by the plaintiff to be true, whether controverted or not. Cepeda v. Kass, 62 Mass.App.Ct. 732, 738 (2004).
Here, plaintiffs assert jurisdiction over defendants pursuant to the Massachusetts longarm statute, G.L.c. 223A, §3(a). That section authorizes personal jurisdiction over a person “as to a cause of action in law or equity arising from the person’s (a) transacting any business in this commonwealth.. .”[4] To meet the requirements of that section, plaintiffs must show that (1) defendants transacted business in the Commonwealth and (2) plaintiffs’ claims arise from that transaction of business. The “transacting business” clause is to be construed broadly. “Although an isolated (and minor) transaction with a Massachusetts resident may be insufficient, generally the purposeful and successful solicitation of business from residents of the Commonwealth, by a defendant or its agent, will suffice to satisfy this requirement.” Tatro, 416 Mass, at 767, citing Good Hope Indus., Inc. v. Ryder Scott Co., 378 Mass. 1, 8 n.13 (1979).
The sale of an entire business for $80 million to a Massachusetts resident can hardly be described as a minor or isolated transaction. The transaction, requiring a 73-page Purchase Agreement, may reasonably be inferred to have involved numerous and substantial contacts and communications between the parties and their representatives. While the sale of the business was a one-time event, the Purchase Agreement and the employment agreements contemplated an ongoing relationship among Alere, Arriva, Wallace and Stocksdale. The noncompetition covenant, on which plaintiffs’ claim is based, ran for a period of five years following the closing. In sum, the transaction, viewed in its entirety, was not isolated.
The transaction was also not a minor one. In Good Hope Indus., 378 Mass, at 9, the Court found that the sending of several appraisal reports by a Texas company to a Massachusetts company (concerning property in Texas), having telephone conversations about the reports, and invoicing for the reports, amounted to a transaction with “commercial consequences” in Massachusetts. Similarly, a transaction involving the expenditure by a Massachusetts based company of over $80 million to obtain, among other things, an ongoing commitment not to compete by the parties receiving the proceeds, has significant commercial consequences in Massachusetts. The fact that Wallace and Stocksdale did not come to Massachusetts is not determinative. Physical presence in the Commonwealth is not required as a basis for jurisdiction. Id. at 10-11.[5] Consequently, I find that Wallace and Stocksdale transacted business in the Commonwealth by the sale of their company.
In addition, it is beyond argument that the claims by Alere and Arriva that Wallace and Stocksdale breached their obligations under the Purchase Agreement and their employment agreements arise directly from defendants’ transaction of business in the Commonwealth. Stated another way, but for the transaction of business (entering into the contract for the sale of the business), Alere and Arrivas would have no claims. Accordingly, Alere satisfies its burden of showing that personal jurisdiction may be maintained for claims against Wallace and Stocksdale under the Massachusetts longarm statute.
Alere must also show that the exercise of personal jurisdiction over Wallace and Stocksdale is consistent with the due process requirements of the United States Constitution. “ ‘[T]he constitutional touchstone’ of the determination whether an exercise of personal jurisdiction comports with due process ‘remains whether the defendant purposefully established ’’minimum contacts" in the forum state.’ “ Tatro, 416 Mass, at 772, quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985). ’’The due process analysis entails three requirements. First, minimum contacts must arise from some act by which the defendant ‘purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.’ Second, the claim must arise out of or relate to the defendant’s contacts with the forum. Third, ‘the assertion of jurisdiction over the defendant must not offend “traditional notions of fair play and substantial justice.” ’ “ Bulldog Investors, 457 Mass. at 217 (citations omitted).
The first prong of the due process test is easily satisfied. Wallace and Stocksdale purposefully, and voluntarily, decided to sell their company to a Massachusetts based corporation. They willingly engaged in extended communications with the Massachusetts company about the purchase. They made promises to the Massachusetts based company with respect to noncompetition, among other things, in the Purchase Agreement. They knew they would have a continuing relationship and obligation to Alere. See Burger King Corp., 471 U.S. at 473 (parties who “reach out beyond one state and create continuing relationships and obligations with citizens of another state” have minimum contacts for personal jurisdiction). Finally, Wallace and Stocksdale agreed to obtain the benefits and protections of Massachusetts law by stipulating to the choice of law provision in the Purchase Agreement.
The second prong of the due process test is established, as already determined with respect to the application of the longarm statute. Because Alere’s claim arises out of and relates to the contract that constitutes the doing of business in Massachusetts, *136 the claim meets the constitutional requirement of relatedness. Hahn v. Vermont Law School, 698 F.2d 48, 51 (1st Cir. 1983) (where the cause of action is for breach of contract, and the business transacted was the formation of the contract, the relatedness requirement is satisfied).
Finally, the exercise of jurisdiction over Wallace and Stocksdale meets the “traditional notions of fair play and substantial justice” test. Five factors are to be examined to bear upon the fairness of subjecting non-resident defendants to the jurisdiction of the Massachusetts court: (1) the defendants’ burden of appearing: (2) the interest of Massachusetts in adjudicating the dispute; (3) the plaintiffs interest in obtaining convenient and effective relief; (4) the judicial system’s interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies. See Burger King, 471 U.S. at 477.
The burden to the defendants must be “special” or “unusual” to be considered as a due process protection. See Sawtelle v. Farrell, 70 F.3d 1381, 1395 (1st Cir. 1995). While appearing in Massachusetts is not the most convenient for the defendants, the burden is not substantial. Defendants received multi-millions of dollars in this transaction with a Massachusetts based company such that travel expense is not a burden. One of the defendants owns a vacation home in Massachusetts and, it maybe inferred, travels to the home. Defendants do not raise in their affidavits any particularized burden with respect to traveling to Boston for this litigation. Moreover, when balanced against plaintiffs’ interest in obtaining convenient and effective relief in Massachusetts, the burden on defendants of appearing in Massachusetts is reasonable.
Massachusetts’s interest in adjudicating the dispute, along with the judicial system’s interest in obtaining the most effective resolution of the controversy, are in favor of exercising personal jurisdiction over the defendants. Indeed, the parties chose Massachusetts law to govern any dispute arising from the Purchase Agreement. In addition, a plaintiffs choice of forum is entitled to a degree of deference. Id.
On balance, the exercise of personal jurisdiction over the defendants in Massachusetts is reasonable and consistent with constitutional requirements.
Lastly, defendants request that the court dismiss this action on the ground of Jorum non conveniens. Under G.L.c 223A, §5, a court may stay or dismiss an action where it is “in the interest of substantial justice [that] the action should be heard in another forum.” “The guiding principle of the analysis is that ‘the plaintiffs’] choice of forum should rarely be disturbed’ unless the balance of both private and public concerns strongly favors the defendant’s motion.” Green v. Manhattanuille College, 40 Mass.App.Ct. 76, 79 (1996), citing New Amsterdam Cas. Co. v. Estes, 353 Mass. 90, 95 (1967). Defendants fail to aver or establish sufficient concerns to overcome plaintiffs’ right to elect the forum.
The private concern regarding accessibility to evidence is neutral when it comes to comparing Massachusetts to Florida. Both jurisdictions will house documents relative to the dispute. Alere had conducted its own due diligence regarding the company purchased by Wallace and Stocksdale that is now, allegedly, competing with Arriva. Alere’s documents and witnesses are in Massachusetts. Also, Alere is familiar with Arriva’s business model having now owned it as a subsidiary for almost four years. While there may be important witnesses located in Florida, there is no identification by defendants of the number of witnesses in Florida or the potential lack of availability of any witness when the case proceeds in Massachusetts.
As to public concerns, the matching of the forum to the parties’ choice of law (Massachusetts) speaks strongly in favor of keeping the case here. As described above, Massachusetts has a substantial interest in resolving a dispute involving a Massachusetts based company, especially where the dispute concerns ongoing obligations allegedly owed by defendants to the Massachusetts company.
Accordingly, defendants’ request to dismiss on forum non conveniens grounds is denied.
ORDER
For the reasons stated above Defendants’ motion to dismiss for lack of personal jurisdiction and for forum non conveniens is DENIED.

 h'he acquisition by Alere was accomplished through a wholly-owned subsidiary, AML Medical, Inc. AML Medical, Inc. is also a Massachusetts based company.

 Plaintiffs do not assert jurisdiction under any other section of the statute.

 here is an additional ground for finding that jurisdiction exists. In the Supreme Judicial Court’s decision in Carlson Corp., v. University of Vermont, 380 Mass. 102 (1980), the Court stated “[t]here can be no doubt that physically signing a contract in Massachusetts is, in literal terms, transacting business in Massachusetts, if the cause of action arises from that contract.” Id. at 105. Had Wallace and Stocksdale come to Massachusetts for the closing, that would be the end of the inquiry regarding satisfaction of Section 3(a). Alere argues, with some force, that the virtual attendance by Wallace and Stocksdale at the virtual closing should produce the same result. Alere notes the quote from Good Hope Indus, where the Court stated “(m]odem technology has taken us far beyond the point where two men must stand in each other’s physical presence to transact business.” Good Hope Indus., 378 Mass. at 11, citing McGrow v. Matthaei, 340 F.Sup. 162, 164 (E.D.Mich. 1972). Here, the parties agreed that the closing of the transaction was required to be in Boston. The fact that the closing was “virtual” does not abate the conclusion that the parties were transacting business in Massachusetts.