## BULLDOG INVESTORS GENERAL PARTNERSHIP & others[1] *vs.* SECRETARY OF THE COMMONWEALTH.

Suffolk. April 6, 2010. - July 2, 2010.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, CORDY, & GANTS, JJ.

*Securities. Uniform Securities Act. Secretary of the Commonwealth. Jurisdiction,* Personal, Nonresident, Long-arm statute. *Due Process of Law,* Jurisdiction over nonresident. *Contract,* Offer and acceptance.

In an administrative proceeding to determine whether the nonresident plaintiffs offered unregistered securities for sale in the Commonwealth in violation of the Massachusetts Uniform Securities Act (act), the Secretary of the Commonwealth (Secretary) properly concluded that the plaintiffs were subject to personal jurisdiction in Massachusetts, where the act itself authorized the Secretary to exercise personal jurisdiction over nonresident plaintiffs in such a proceeding [215-217]; and where that exercise of personal jurisdiction comported with due process, in that the plaintiffs, by contacting a Massachusetts resident who visited and registered with their Web site, purposefully availed themselves of the privilege of conducting business activities in Massachusetts and invoked the protection of Massachusetts law; the enforcement proceedings arose out of those contacts with Massachusetts; and the exercise of personal jurisdiction comported with fair play and substantial justice [217-218]; moreover, the facts in the record were sufficient to establish personal jurisdiction over the individual plaintiffs, in addition to the partnership that operated the Web site [219].

In a civil action for judicial review of an administrative proceeding, there was no merit to the plaintiffs' claim that a cease and desist order entered against them by the Secretary of the Commonwealth violated their rights under the First Amendment to the United States Constitution, where the plaintiffs had litigated that claim in a separate civil action filed pursuant to 42 U.S.C. § 1983, and did not raise the issue in their complaint for judicial review in the instant case. [219-220]

In an administrative proceeding, the Secretary of the Commonwealth properly concluded that an electronic mail message the plaintiffs sent to a Massachusetts resident who visited and registered with their Web site constituted an offer of unregistered securities in violation of the Massachusetts Uniform Securities Act (act), where the act defines the term "offer" to include the "solicitation of an offer," and where the disclaimers posted on the Web site did not defeat liability. [220-221]

[1]Opportunity Partners L.P.; Full Value Partners L.P.; Opportunity Income Plus Fund L.P.; Kimball & Winthrop, Inc.; Full Value Advisors, LLC; Spar Advisors, LLC; Phillip Goldstein; Steven Samuels; Andrew Dakos; and Rajeev Das.

CIVIL ACTION commenced in the Superior Court Department on November 15, 2007.

The case was heard by *Judith Fabricant,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Andrew Good (Philip G. Cormier* with him) for the plaintiffs.

*Pierce O. Cray,* Assistant Attorney General *(Peter W. Cassidy* with him) for the defendant.

COWIN, J. A hearing officer in the Securities Division (division) of the office of the Secretary of the Commonwealth (Secretary) found that the plaintiffs violated G. L. c. 110A, the Massachusetts Uniform Securities Act (act), by offering unregistered securities to a Massachusetts resident via electronic mail (e-mail). The plaintiffs sought judicial review of this ruling, and a judge in the Superior Court affirmed. The plaintiffs contend that their contacts with the Commonwealth were insufficient to permit the Secretary to exercise personal jurisdiction over them, that the act violates their constitutional right to free speech, and that the communication did not constitute an offer within the meaning of the act. We conclude that personal jurisdiction over the plaintiffs was both statutorily authorized and consistent with due process, that the constitutional claim is not properly before us, and that the Secretary determined correctly that the plaintiffs violated the act. Unlike at common law, where the definition of an offer includes only communications to which an offeree's affirmative response would conclude a bargain, the act defines an "offer" more broadly to include the "solicitation of an offer." See G. L. c. 110A, § 401 (*i*) (2). Thus, the plaintiffs violated the act by sending to a Massachusetts resident materials soliciting an offer to purchase unregistered securities.

1. *Facts and procedural history.* We summarize the facts found by the hearing officer, supplemented with undisputed facts from the record. From approximately June 9, 2005, through January 5, 2007, Bulldog Investors General Partnership (Bulldog) operated an interactive Web site that provided information about investment products it offered for sale. Users could obtain more specific information about Bulldog's "hedge funds" by registering with the site.

On November 10, 2006, Brendan Hickey, a Massachusetts

resident, registered by providing Bulldog with his name, address, telephone number, and e-mail address. Steven Samuels, a Bulldog employee, responded to Hickey's registration with an e-mail message to which documents were attached that contained detailed information regarding the performance of the plaintiffs' hedge funds, the returns the funds had earned, background information on Bulldog's partners, news articles about the funds, and a description of the plaintiffs' investment philosophy and strategy. Samuels also invited Hickey to contact him by telephone to discuss Bulldog's funds in greater detail.

On January 31, 2007, the Secretary filed an administrative complaint against the plaintiffs[2] alleging that Bulldog's Web site and e-mail contact with Hickey constituted an offer of securities that were neither registered nor exempt from registration, in violation of the act. See G. L. c. 110A, § 301. In their answer, the plaintiffs denied violating the act and asserted as affirmative defenses (1) that the act and the Secretary's regulations violated the plaintiffs' right to free speech under the First Amendment to the United States Constitution and art. 16 of the Massachusetts Declaration of Rights; and (2) that in any event the Secretary lacked personal jurisdiction over the plaintiffs. The Secretary appointed a hearing officer pursuant to 950 Code Mass. Regs. § 10.02(b)(8) (1993).

The Secretary moved for summary decision, arguing that the hearing officer lacked the authority to decide the plaintiffs' constitutional claims. In response, the plaintiffs filed a complaint in the Superior Court pursuant to 42 U.S.C. § 1983 and G. L. c. 12, § 11I, asserting their constitutional claim regarding free speech.[3] The plaintiffs sought a stay of the administrative pro-

---

[2]Plaintiffs Opportunity Partners L.P.; Full Value Partners L.P.; and Opportunity Income Plus Fund L.P., are general partners of Bulldog Investors General Partnership (Bulldog). Plaintiff Kimball & Winthrop, Inc., is a managing general partner of Bulldog. Plaintiff Full Value Advisors, LLC, is the sole general partner of Full Value Partners L.P. Plaintiff Spar Advisors, LLC, is the sole general partner of Opportunity Income Plus Fund L.P. Plaintiffs Andrew Dakos, Rajeev Das, and Steven Samuels are principals of Bulldog. Plaintiff Phillip Goldstein is the president of Kimball & Winthrop, Inc., and a cofounder of Bulldog.

[3]In the 42 U.S.C. § 1983 action, the plaintiffs did not initially assert their contention that the exercise of personal jurisdiction by the Secretary of the Commonwealth (Secretary) violated due process. They later amended their complaint to include this claim.

ceeding pending resolution of the First Amendment claim in the Superior Court; the hearing officer denied the request. She stated that the only issue before her was whether the plaintiffs violated the act and that she was required to make a finding regarding liability before a court could decide whether there had been an abridgement of the plaintiffs' First Amendment right.[4]

The hearing officer concluded that the plaintiffs had offered unregistered securities for sale in the Commonwealth. In addition, she determined that the plaintiffs did not qualify for various exemptions to the registration requirement. Finally, the hearing officer concluded that the plaintiffs were subject to personal jurisdiction in Massachusetts because their violation of the act constituted a sufficient nexus to permit personal jurisdiction. She recommended the issuance of a cease and desist order and a $25,000 fine.

The acting director of the Securities Division (acting director) adopted the hearing officer's recommended findings of fact and rulings of law and imposed the recommended sanctions.[5] The plaintiffs sought judicial review of the acting director's determination in the Superior Court and moved for judgment on the pleadings. See G. L. c. 30A, § 14; G. L. c. 110A, § 411. See also Standing Order 1-96(4) of the Rules of the Superior Court (2002) ("A claim for judicial review shall be resolved through a motion for judgment on the pleadings . . ."). In a thoughtful memorandum of decision, a judge in the Superior Court[6] denied the motion and affirmed the acting director's ruling. The judge concluded that personal jurisdiction over the plaintiffs was both statutorily authorized and consonant with due process. In addition, she held that, after having chosen to use the separate 42

---

[4]From this point forward, the plaintiffs did not argue the First Amendment claim before the hearing officer. Instead, they asserted that claim without argument in their opposition to the motion for summary decision and stated that they agreed with the Secretary that a court should address that claim.

[5]The acting director of the Securities Division stayed the imposition of sanctions until the Superior Court ruled on a motion for a preliminary injunction in the 42 U.S.C. § 1983 action. A judge in the Superior Court later denied this motion.

[6]The judge who decided the plaintiffs' G. L. c. 30A, § 14, action was the same judge who had earlier denied the plaintiffs' motion for a preliminary injunction in the 42 U.S.C. § 1983 action.

U.S.C. § 1983 action as the vehicle to obtain relief on their First Amendment claim, the plaintiffs could not raise that claim in the action pursuant to G. L. c. 30A, § 14. The plaintiffs appealed, and we transferred the case from the Appeals Court on our own motion.

2. *Standard of review.* Pursuant to G. L. c. 110A, § 411, "[a]ny person aggrieved by a final decision of the Secretary in an adjudicatory proceeding may obtain judicial review." See G. L. c. 30A, § 14. We reverse the Secretary's decision only if it was "(*a*) [i]n violation of constitutional provisions"; "(*b*) [i]n excess of the statutory authority or jurisdiction" of the Secretary; "(*c*) [b]ased upon an error of law"; "(*d*) [m]ade upon unlawful procedure"; "(*e*) [u]nsupported by substantial evidence"; "(*f*) [u]nwarranted by facts found by the court . . . where the court is constitutionally required to make independent findings of fact"; or "(*g*) [a]rbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law." See G. L. c. 30A, § 14 (7).

3. *Discussion.* The plaintiffs contend that the Web site and the single e-mail message to Hickey were insufficient contacts with the Commonwealth to subject them to personal jurisdiction before the Secretary. They claim that the act does not authorize the Secretary to subject nonresidents to administrative enforcement proceedings. Furthermore, they argue that exercising personal jurisdiction in this case violated the due process clause of the Fourteenth Amendment to the United States Constitution because the plaintiffs did not purposefully avail themselves of the benefits of Massachusetts law.

The plaintiffs contend also that "[t]he Secretary's order is an unconstitutional prior restraint on truthful, non-misleading speech that does not concern an illegal transaction," in violation of the First Amendment and art. 16. They argue in addition that their Web site and e-mail message did not constitute an "offer" within the meaning of the act. See G. L. c. 110A, § 401 (*i*) (2). They contend that the communication to Hickey was not an offer because he could not have purchased securities merely by responding to the e-mail message. In addition, they contend that Hickey agreed to a disclaimer posted on the Web site stating that the information contained therein did not constitute a solicitation.

The Secretary responds that the broad enforcement powers granted him under the act authorized personal jurisdiction in this case. He argues also that his exercise of jurisdiction comported with due process because the plaintiffs purposefully availed themselves of the privilege of conducting activities in Massachusetts. Furthermore, he contends that they could have reasonably anticipated being the subject of an enforcement proceeding by virtue of their violation of the act. Additionally, the Secretary contends that the plaintiffs' First Amendment claim is waived, and that, even if not waived, the claim fails because there is no constitutional prohibition on requiring that a seller of securities disclose information about its products through registration before being allowed to offer or advertise them. Finally, the Secretary argues that the plaintiffs' communication with Hickey constituted a solicitation that falls within the act's definition of an offer; he notes that the act's definition of the term "offer" is not limited to its common-law definition.

a. *Personal jurisdiction.* For a nonresident to be subject to personal jurisdiction in Massachusetts, there must be a statute authorizing jurisdiction and the exercise of jurisdiction must be "consistent with basic due process requirements mandated by the United States Constitution." *Intech, Inc.* v. *Triple "C" Marine Salvage, Inc.*, 444 Mass. 122, 125 (2005), quoting *Tatro* v. *Manor Care, Inc.*, 416 Mass. 763, 767 (1994). We analyze each requirement separately.

i. *Statutory authorization of personal jurisdiction.* In court proceedings, personal jurisdiction in Massachusetts over a nonresident is authorized when one of the provisions of our long-arm statute, G. L. c. 223A, § 3, is satisfied. See *Roberts* v. *Legendary Marine Sales*, 447 Mass. 860, 862-863 (2006). By its terms, the long-arm statute applies only to courts and cannot authorize an agency to exercise personal jurisdiction over nonresidents. See G. L. c. 223A, § 3.[7] However, the long-arm statute is not the only source for the exercise of personal jurisdic-

---

[7]General Laws c. 223A, § 3, authorizes a court to exercise personal jurisdiction over a person when a cause of action arises from, inter alia, "the person's . . . transacting any business in this commonwealth; . . . contracting to supply services or things in this commonwealth; . . . causing tortious injury by an act or omission in this commonwealth; . . . [or] causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he

tion over nonresidents. The text and purposes of the act itself establish that it authorizes the Secretary to exercise personal jurisdiction over nonresidents in an administrative proceeding.

The act prohibits the offering or selling of unregistered securities in the Commonwealth unless the securities are exempt from the registration requirement or are Federal "covered" securities. See G. L. c. 110A, § 301. The definition of "offer" includes not only offers that originate within the Commonwealth but also ones directed into the Commonwealth and received at the place to which they are directed. See G. L. c. 110A, § 414 (*c*). The Secretary possesses the authority to conduct investigations inside or outside the Commonwealth to determine if a violation has occurred. See G. L. c. 110A, § 407 (*a*). He also has broad authority to remedy "a violation of any provision" of the act by "any person" by imposing cease and desist orders or fines. See G. L. c. 110A, § 407A (*a*). These provisions establish that one of the purposes of the act is to protect Massachusetts residents from offers and sales of unregistered securities directed at them from other jurisdictions. These protections and the Secretary's authority to conduct investigations outside the Commonwealth would be meaningless without authorization to subject nonresidents to enforcement proceedings.

Furthermore, the act provides that, where personal jurisdiction "cannot otherwise be obtained in the Commonwealth," any nonresident who has violated the act is deemed to have appointed the Secretary as his agent to receive process in any noncriminal proceeding arising out of that conduct. See G. L. c. 110A, § 414 (*h*). This authority to serve process would be ineffective in enforcing the act through administrative proceedings unless accompanied by the power to bring a respondent before a tribunal to adjudicate whether a violation occurred. Interpreting the statute to authorize service of process without authorizing personal jurisdiction would transform the substituted service provision into a nullity. See *Flemings* v. *Contributory Retirement Appeal Bd.*, 431 Mass. 374, 375-376 (2000) ("If a sensible construction is available, we shall not construe a statute

regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth."

to make a nullity of pertinent provisions or to produce absurd results").[8]

ii. *Due process.* " 'The constitutional touchstone' of the determination whether an exercise of personal jurisdiction comports with due process 'remains whether the defendant established "minimum contacts" in the forum state.' " *Tatro* v. *Manor Care, Inc.*, 416 Mass. 763, 772 (1994), quoting *Burger King Corp.* v. *Rudzewicz*, 471 U.S. 462, 474 (1985). The due process analysis entails three requirements. First, minimum contacts must arise from some act by which the defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Tatro* v. *Manor Care, Inc.*, *supra*, quoting *Asahi Metal Indus. Co.* v. *Superior Court*, 480 U.S. 102, 108-109 (1987). Second, the claim must arise out of or relate to the defendant's contacts with the forum. See *Tatro* v. *Manor Care, Inc.*, *supra*. Third, "the assertion of jurisdiction over the defendant must not offend 'traditional notions of fair play and substantial justice.' " *Tatro* v. *Manor Care, Inc.*, *supra* at 773, quoting *International Shoe Co.* v. *Washington*, 326 U.S. 310, 316 (1945).

By contacting Hickey, the plaintiffs purposefully availed themselves of the privilege of conducting business activities in Massachusetts and invoked the protection of Massachusetts law. See *Tatro* v. *Manor Care, Inc.*, *supra* (solicitation of business in Massachusetts invokes benefits and protection of Massachusetts law). Because the plaintiffs operated a Web site accessible in Massachusetts and sent a solicitation that is prohibited by Massachusetts law to a Massachusetts resident, it was reasonable for the plaintiffs to anticipate being held responsible in Massachusetts.

---

[8]In other contexts, courts have recognized that substituted service provisions authorize personal jurisdiction. See *Hess* v. *Pawloski*, 274 U.S. 352, 355-357 (1927) (statute considering operation of motor vehicle on public highway to be appointment of state official as agent for receiving process confers personal jurisdiction). See also *LSI Indus., Inc.* v. *Hubbell Lighting, Inc.*, 232 F.3d 1369, 1371 (Fed. Cir. 2000); *Renfro* v. *Adkins*, 323 Ark. 288, 294 (1996); *Cherokee* v. *Parsons*, 944 So. 2d 886, 889-890 (Miss. 2006). The plaintiffs point out that the court in *MFS Series Trust III* v. *Grainger*, 96 P.3d 927, 934 (Utah 2004), interpreted the substituted service provision of Utah's securities act as authorizing service of process but not personal jurisdiction. We decline to follow this interpretation because it relies on cases analyzing whether a defendant possessed minimum contacts sufficient to satisfy due process, rather than whether personal jurisdiction was statutorily authorized. See *id.*

See *World-Wide Volkswagen Corp.* v. *Woodson,* 444 U.S. 286, 297 (1980) ("the foreseeability that is critical to due process analysis . . . is [whether] the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there").

At the time of their communication with Hickey, the plaintiffs were on notice that Hickey was a resident of Massachusetts. Additionally, the act placed the plaintiffs on notice that directing offers of unregistered securities into Massachusetts is unlawful. See G. L. c. 110A, §§ 301, 414 (*a*), (*c*). By soliciting purchases of their hedge funds, the plaintiffs sought to derive commercial benefit from their interaction with Hickey. Therefore, it would be unfair "to escape having to account in [Massachusetts] for consequences that arise proximately from such activities." *Burger King Corp.* v. *Rudzewicz, supra* at 473-474.

The plaintiffs suggest that we have ruled in prior cases that contacts more substantial than those existing here were insufficient to sustain personal jurisdiction. See *Roberts* v. *Legendary Marine Sales,* 447 Mass. 860, 861-862, 865 (2006); *Droukas* v. *Divers Training Academy, Inc.,* 375 Mass. 149, 151, 157 (1978). These cases are inapposite because they considered only whether personal jurisdiction was statutorily authorized by the long-arm statute. They did not address the due process question.

The second and third prongs of the due process analysis are also satisfied in this case. It is undisputed that the Secretary's enforcement proceedings arose out of the plaintiffs' contacts with Massachusetts. Finally, exercising personal jurisdiction in these circumstances comports with fair play and substantial justice. In determining whether fair play and substantial justice are satisfied, we weigh the Commonwealth's interest in adjudicating the dispute, the burden on the out-of-State party of litigating in Massachusetts, and the Commonwealth's interest in obtaining convenient and effective relief. See *Burger King Corp.* v. *Rudzewicz, supra* at 476-477. Massachusetts has a strong interest in adjudicating violations of Massachusetts securities law. See *Tatro* v. *Manor Care, Inc., supra.* Although there may be some inconvenience to the plaintiffs in litigating in Massachusetts, such inconvenience does not outweigh the Commonwealth's interest in enforcing its laws in a Massachusetts forum.

The plaintiffs contend that, even if the Secretary possessed personal jurisdiction over Bulldog, he could not exert personal jurisdiction over the individual plaintiffs. The Secretary has the burden of proving facts sufficient to establish that personal jurisdiction is permissible. See *Miller* v. *Miller*, 448 Mass. 320, 325 (2007). Because the facts in the record are sufficient to establish personal jurisdiction over each individual plaintiff, that burden has been met here.

In the administrative complaint, the Secretary alleged that Hickey was sent advertising and offering materials through e-mail. In their answer to the administrative complaint, each individual plaintiff admitted that he provided information via e-mail to Hickey. While some of the individual plaintiffs later filed affidavits stating that they were not involved in sending this communication, the Secretary was entitled to credit the facts admitted in the answer rather than the affidavits. See *Walker* v. *Georgetown Housing Auth.*, 424 Mass. 671, 672 n.3 (1997).[9] Because each individual plaintiff admitted to facts sufficient to form a basis for personal jurisdiction, the Secretary's finding that he possessed personal jurisdiction over all the plaintiffs is supported by substantial evidence.[10]

b. *First Amendment claim.* The plaintiffs argue that "[t]he Secretary's order is an unconstitutional prior restraint on truthful, non-misleading speech that does not concern an illegal transaction." The Secretary contends that the plaintiffs' First Amendment claim has been waived, and that, even if it has not been waived, the cease and desist order and the act itself do not violate the constitutional protection of freedom of speech.

The plaintiffs initially asserted their First Amendment defense in their answer to the administrative complaint. The hearing

[9]The cases cited by the plaintiffs, stating that personal jurisdiction cannot be exercised over corporate officers based on the contacts of their corporation, are also inapposite. Because Bulldog is a partnership, not a corporation, these principles are not applicable to this case. Even if these cases were applicable, they would be unavailing. In this case, personal jurisdiction was based on the admission each individual plaintiff made in the answer, not the contacts of the corporation. As stated, the Secretary was entitled to rely on this admission.

[10]The plaintiffs assert that Hickey's inquiry to Bulldog was made at the request of a competitor with whom Bulldog was involved in a legal dispute and was a "sham." It is irrelevant whether Hickey contacted Bulldog without the intention of actually purchasing securities.

officer declined to rule on this issue; instead, she agreed that the constitutional defense should be decided by a court. The hearing officer apparently viewed the constitutional claim as a challenge to the enabling statute and, as such, beyond the authority of the Secretary to adjudicate. See *Gurry* v. *Board of Public Accountancy*, 394 Mass. 118, 126 (1985).

In response to the hearing officer's position, the plaintiffs litigated the First Amendment issue in a separate action in the Superior Court in which they asserted violations of 42 U.S.C. § 1983.[11] The plaintiffs did not raise the First Amendment issue in their complaint for judicial review in the instant case, brought pursuant to G. L. c. 30A, § 14. They did plead the issue and litigate it in the 42 U.S.C. § 1983 action. In these unusual circumstances, the 42 U.S.C. § 1983 action is the proper forum for resolving the plaintiffs' First Amendment claim.

c. *Violation of the act.* The Secretary determined properly that the plaintiffs' e-mail message to Hickey violated the act. The act defines an offer to include the "solicitation of an offer." See G. L. c. 110A, § 401 (*i*) (2). Thus, as stated, for the purposes of the act, the term "offer" is not limited to its common-law definition.[12] The e-mail message sent to Hickey, and the materials attached to it, contained detailed information regarding the performance of the plaintiffs' hedge funds, the returns the funds had earned, background information on Bulldog's partners, news articles about the funds, and a description of the plaintiffs' investment philosophy and strategy. It is clear that these materials were designed to stimulate interest in Bulldog's funds. Thus, the communication constituted a solicitation of an offer to buy unregistered securities. See *I & R Mechanical, Inc.* v. *Hazelton Mfg. Co.*, 62 Mass. App. Ct. 452, 455 (2004) (advertisements are usually considered requests for offers). See also 1 Williston, Contracts § 4:10, at 475 (4th ed. 2007).

---

[11]Judgment *was entered in favor of the Secretary in the* 42 U.S.C. § 1983 *action. The plaintiffs appealed that decision, and their appeal is now pending in the Appeals Court.*

[12]At common law, an offer is "the manifestation of willingness to enter into a bargain made in such a way as to justify the other person in understanding that his assent will conclude the agreement." *I & R Mechanical, Inc.* v. *Hazelton Mfg. Co.*, 62 Mass. App. Ct. 452, 455 (2004), citing Restatement (Second) of Contracts § 24 (1981).

The plaintiffs contend that because Hickey would have needed to take additional steps before being permitted to purchase Bulldog's securities, the e-mail communication cannot constitute an offer. Because in this context the term "offer" is not limited to its common-law definition, see G. L. c. 110A, § 401 (*i*) (2), it is not required that the plaintiffs' communication be such that Hickey's assent would have concluded a bargain. See note 12, *supra.*

Additionally, the disclaimers posted on the Web site do not defeat liability. In order to access certain parts of the Web site, users are required to acknowledge disclaimers stating that the Web site does not constitute a solicitation and the Web site cannot be used for the purpose of an offer or solicitation in any circumstances where such an offer or solicitation would be unlawful. However, the plaintiffs cannot escape liability for offering unregistered securities merely by stating to the users of their Web site that their conduct does not constitute an offer. The presence of a disclaimer asserting that the Web site was not an offer or a solicitation is not dispositive; the disclaimer is only one factor in determining whether the plaintiffs' communication with Hickey was an offer or a solicitation. Cf. *LeMaitre* v. *Massachusetts Turnpike Auth.,* 452 Mass. 753, 756 (2008); *Theos & Sons, Inc.* v. *Mack Trucks, Inc.,* 431 Mass. 736, 744 (2000). Here, as stated, the materials sent to Hickey were designed to stimulate interest in purchasing Bulldog's securities. Most importantly, the e-mail message sent to Hickey and the attachments therein did not contain the disclaimer that was posted on the Web site. For these reasons, the e-mail message sent to Hickey was an offer within the meaning of the act.

4. *Conclusion.* The Secretary possessed personal jurisdiction over the plaintiffs, and his determination that the plaintiffs violated the act was correct. Therefore, the decision of the Superior Court, affirming the issuance of the cease and desist order and the imposition of the fine, was also correct.

*Judgment affirmed.*