Fahey, Elizabeth M., J.
The plaintiff, Boston Pads, LLC (“Boston Pads”) entered into a contract (“Contract”) with the defendant, The Black Dog Group, Inc. (“TBDGI”) on September 27, 2013. Boston Pads brought this action against TBDGI, asserting breach of contract, unfair and deceptive conduct in violation of M.G.L.ch. 93A as well as claims of fraud, misrepresentation, unjust enrichment and negligence. The action is now before the court on TBDGI’s motion to dismiss for lack of personal jurisdiction. For the following reasons, the motion is DENIED.
BACKGROUND
The following relevant jurisdictional facts are taken from the materials before the court. Boston Pads is a company based in Massachusetts. TBDGI is a company based in California, engaging in the business of web design and development. According to the affidavit of TBDGI’s President and registered agent, Laurel Paquette (“Paquette”), TBDGI does not maintain a business office, nor does it own any real property in Massachusetts. TBDGI does maintain a website, www.blackdogcreativegroup.com (“Website”), which is accessible (presumably all the time) in Massachusetts. The Website includes information about TBDGI’s services, clientele, contact information, etc. Insofar as businesses in Massachusetts are concerned, TBDGI has only provided services on the internet; it has not provided any services physically in Massachusetts.
In or about May 2013, Boston Pads came across the defendant’s Website and entered into communications [1] with TBDGI in order to negotiate terms, services and costs associated with the upgrading of the Boston Pads’ websites. On or about August 15, 2013, TBDGI presented its proposal to Boston Pads in relation to the services of interest to Boston Pads. Following further communications, the parties entered into the Contract on September 27, 2013. Under the Contract, completion of TBDGI’s service was scheduled for April 18, 2014. Between September and April, the parties continued to engage in communications about the Contract, part of which was conducted through emails and telephone calls placed to and from Massachusetts.
In negotiating the terms of the Contract, Boston Pads specifically discussed with TBDGI the issue of choice of law and the parties agreed, pursuant to paragraph 8.14 of the Contract, that “[the] [C]ontract shall be governed by the substantive laws of the State of Massachusetts without regard to conflict of law principles.”
DISCUSSION
In order for a Massachusetts court to exercise personal jurisdiction over a non-resident defendant, the defendant’s conduct must fall within one of the subsections of the Massachusetts longarm statute, G.L.c. 223A, §3(a)-(h). See Good Hope Industries, Inc. v. Ryder Scott Co., 387 Mass. 1, 5-6 (1979). In addition, the exercise of personal jurisdiction must comply with the due process requirements of the U.S. Constitution. See Id. at 5-6, 389 N.E.2d 76.
Relative to a motion to dismiss filed pursuant to Mass.R.Civ.P. 12(b)(2), the plaintiff bears the burden of establishing facts sufficient to show that the Massachusetts court has personal jurisdiction over the defendant. See Droukas v. Divers Training Academy, Inc., 375 Mass. 149, 151 (1978). At this stage, the court is entitled to view the jurisdictional facts in the light most favorable to the plaintiff. See Cepeda v. Kass, 62 Mass.App.Ct. 732 (2004). The facts asserted by the plaintiff can be taken as true as long as they are “properly supported” by evidence. LaVallee v. Parrot-Ice Drink Prods. of Am., Inc., 193 F.Sup.2d 296, 298 (2002). However, the court is not required to “credit conclusoxy allegations or draw farfetched inferences.” Workgroup Tech. Corp v. MGM Grand Hotel, LCC, 246 F.Sup.2d 102, 108 (D.Mass. 2003).
*555 Longarm Statute
In this case, Boston Pads relies on §3(a) of the longarm statute, G.L.c. 223A, to argue that personal jurisdiction over TBDGI can be exercised. For reasons explained below, this court accepts that personal jurisdiction over TBDGI is properly constituted under G.L.c. 223A, §3(a).
The longarm statute, G.L.c. 223A, §3(a), provides that a court may exercise personal jurisdiction over a person, who acts directly or by agent, as to a cause of action in law or equity arising from the person’s transacting any business in the commonwealth of Massachusetts. This subsection embodies a two-fold inquiry: first, the plaintiff must show that the defendant’s conduct amounted to “transaction of business in the forum state”; second, the plaintiff must show that its injuries “arose from the defendant’s transaction of business” in that forum. Tatro v. Manor Care, Inc., 416 Mass. 736, 767 (1994).
First, the clause “transacting any business” is to be construed broadly. Tatro, 416 Mass. at 767. This requirement is “general and applies to any purposeful acts by an individual, whether personal, private, or commercial.” Nile v. Nile, 432 Mass. 390, 396 (2000). Conduct that amounts to “purposeful and successful solicitation of business” would generally suffice. Tatro, 416 Mass. at 767.
In cases involving the use of a website, the courts have held that the mere existence of a website, even if it was freely accessible by the plaintiff in the forum state, is insufficient to give rise to personal jurisdiction. See McBee v. Delica Co., 417 F.3d 107, 124 (1st Cir. 2005) (“[T]he mere existence of a website that is visible in a forum and that gives information about a company and its products is not enough, by itself, to subject a defendant to personal jurisdiction in that forum”); Comer v. Comer, 295 F.Sup.2d 201, 209-10 (2003) (The fact that the defendant’s websites were accessible by Massachusetts internet users, without more, was not sufficient to establish personal jurisdiction); Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F.Sup. 1119, 1124 (W.D.Pa. 1997) (“A passive Web site that does little more than make information available to those who are interested in it is not grounds for exercise of personal jurisdiction”).
In this case, however, there were evidently other “purposeful” acts committed by TBDGI, evidencing that it has “transacted business” with Boston Pads in Massachusetts. For instance, TBDGI prepared and submitted a proposal for Boston Pads’ consideration after Boston Pads expressed interest in its services. TBDGI also engaged in multiple email correspondences and telephone calls with Boston Pads over an extensive period of at least eight months. I accept that some of these communications occurred relative to the formation of the contract and others relative to the execution of the contract. Such communications, some of which originated in Massachusetts, cannot be said to be merely “incidental” to the Contract. Certainly, their communications concerning choice of law cannot be considered “incidental.” Compare Roberts v. Legendary Marines Sales, 447 Mass. 860 (2006) (personal jurisdiction denied because communications were “nothing more than incidental communications”). Moreover, the fact that TBDGI agreed to include in the Contract a choice of law clause favoring Boston Pads could count as an act of “purposeful and successful solicitation of business.” Tatro, 416 Mass. at 767.
That the communications culminating in the contract might have been initiated by the plaintiff does not affect the analysis. See Workgroup Tech. Corp v. MGM Grand Hotel, 246 F.Sup.2d 102, 110 (2003), citing Hahn v. Vermont Law School, 698 F.2d 48, 50 (1983). Similarly, whether a transaction might be an “isolated” or a “one-shot” transaction is not controlling. The courts have recognized that “even an isolated, ‘one-shot’ transaction with little impact on the commerce of the Commonwealth may constitute transacting business.” Travelers Supply, Inc. v. Hilton Head Labs., Inc., 2008 WL5533434, at [10], citing A-Connoisseur Transp. Corp. v. Celebrity Coach, Inc., 742 F.Sup. 39, 42 (D.Mass. 1990). In the present case, the overall circumstances at least suggest that TBDGI has “transacted business” in Massáchusetts.
As for the second prong, “arising from” has been construed as broadly as “transacting business.” See Tatro, 416 Mass. at 771. Thus, “a claim arises from a defendant’s transaction of business in the forum State if the claim was made possible by, or lies in the wake of, the transaction of business in the forum State.” Id. Because Boston Pads’ claims are based on, or relate directly to, the Contract and TBDGI’s representations relating thereto, this court finds that Boston Pads’ claims against TBDGI did “arise from” the latter’s transaction of business in Massachusetts.
Therefore, the literal requirements of the longarm statute are satisfied.
Due Process
In addition to fulfilling the statutory requirement of G.L.c. 223A, §3, the plaintiff must also show that the exercise of personal jurisdiction over the defendant complies with the due process requirements of the United States Constitution. See Good Hope, 387 Mass. at 5-6. The “constitutional touchstone” of the due process requirement “remains whether the defendant established ‘minimum contacts’ in the forum state.” Bulldog Investors Gen. P'ship v. Secretary of the Commonwealth, 457 Mass. 210, 217 (2010) (internal quotes omitted). This due process analysis involves a three-part test. “First, minimum contacts must arise from some act by which the defendant ‘purposefully avails itself of the privileges of conducting activities within the forum state, thus invoking the benefits and protections of its laws . . . Second, the claim must arise out of or relate to the defendant’s contacts with *556 the forum . .. Third, ‘the assertion of jurisdiction over the defendant must not offend ’’traditional notions of fair play and substantial justice." Id. (internal quotes omitted). They will be analyzed in turn.
Purposeful Availment
As a starting point, the courts seem to have drawn a distinction between cases in which the defendant had done nothing to avoid its presence in the forum state and others where the defendant had specifically avoided activity in the forum state. See Hasbro, Inc. v. Clue Computing, Inc., 994 F.Sup. 34, 44-45 (D.Mass. 1997) (due process requirement was satisfied where the defendant directed its advertising to all states and did nothing to avoid Massachusetts), distinguishing Accutest Corp. v. Accu Test Sys., Inc., 532 F.Sup.416, 420 (D.Mass. 1982) (no personal jurisdiction where the defendant instructed its underwriters not to sell stocks in Massachusetts, thereby purposefully seeking to avoid activity in the forum). Like the defendant in Hasbro, TBDGI in this case had done nothing to avoid being subject to the Massachusetts jurisdiction. It even went further and purposefully transacted business with a Massachusetts company.
At all material times, TBDGI was put on notice that Boston Pads was a company based in Massachusetts. Thus, not only had TBDGI operated the Website which was accessible to all internet users in Massachusetts, it had also responded to this Massachusetts company’s request, persistently engaged in communications via both telephone and email with this Massachusetts company, and had even drafted and accepted a choice of law clause favoring Massachusetts law in the Contract. Although a choice of law provision standing alone is generally insufficient to confer jurisdiction, the above factors taken as a whole sufficiently evidenced TBDGI’s “deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there.” Burger King Corp. v. Rudzewicz, 471 U.S. 461, 482, 85 L.Ed.2d 528 (1985). See also Charles River Data Sys. v. Integrated Mgmt. Sys. of Am., 1989 Mass.App.Div. 179, 182 (1989) (“This choice of law provision signifies the defendant’s intentional election to avail itself of the ‘benefits and protections’ of Massachusetts law” (internal quotes omitted)).
TBDGI cannot deny the salient aspects of its commercial undertaking by simply categorizing its contacts ■with Boston Pads as limited to an “isolated transaction.” The truth is, TBDGI entered into a 10-month contract with a Massachusetts-based company, and included in the Contract a specifically negotiated choice of law clause in favor of Massachusetts law. See Charles River, 1989 Mass.App.Div. at 182 (The court rejected the defendant’s “simplistic categorization of its Massachusetts contacts as limited to an isolated transaction” because the defendant has “in fact negotiated with a Massachusetts corporation for a long-term commercial undertaking” and has included in the contract a choice of law provision providing that the contract be governed by Massachusetts law). For the above reasons, this court finds that TBDGI has “purposefully availed [itself] of the privilege of conducting business activities in Massachusetts and invoked the protection of Massachusetts law.” Bulldog Investors, 457 Mass. at 217.
Relatedness
The relatedness requirement stipulates that the action complained of must “directly arise out of the specific contacts between the defendant and the forum state.” Fern v. Immergut, 55 Mass.App.Ct. 577, 584 (2002), citing Sawtelle v. Farrell 70 F.3d 1381, 1389 (1st Cir. 1995). Since this court has already concluded that Boston Pads’ claims against TBDGI did arise from the latter’s contacts with Massachusetts, this due process requirement is also fulfilled. See Back Bay Farm, LLC v. Collucio, 230 F.Sup.2d 176, 186 (D.Mass. 2002) (“Here, as the court has already determined, Plaintiffs claim arises from Defendant’s Massachusetts activity. The relatedness element has been met”).
Fair Play and Substantial Justice
Third and finally, in determining whether exercising personal jurisdiction in the present case comports with “fair play and substantial justice,” the court must “weigh the Commonwealth’s interest in adjudicating the dispute, the burden on the out-of-State party of litigating in Massachusetts, and the Commonwealth’s interest in obtaining convenient and effective relief.” Bulldog Investors, 457 Mass. at 218, citing Burger King 471 U.S. at 476-77, 105 S.Ct. 21764, 85 L.Ed.2d 528 (1985). In assessing these factors, deference ought to be accorded to the plaintiffs choice of forum. See Clark v. City of St. Augustine, 977 F.Sup. 541, 545 (1997); Noonan v. Colour Library Books, 947 F.Sup. 564, 569 (1996).
Applying these factors, first, this Commonwealth clearly has an interest in adjudicating the dispute because of its “legitimate desire to protect its citizens by affording them a forum with the State for the enforcement of their claims against nonresidents.” Mark v. Obear & Sons, Inc., 313 F.Sup. 373, 376 (1970). Second, the mere inconvenience that may be caused to the defendant does not outweigh the Commonwealth’s interest. Bulldog Investors, 457 Mass. at 218. TBDGI has failed to articulate any “special or unusual burden” that it may suffer as a result of this court’s exercise of personal jurisdiction over it. Hasbro 944 F.Sup. at 45. Third, given that the choice of law clause would dictate that the substantive dispute be governed by Massachusetts law, having a Massachusetts’ court as the forum is likely to bring about a more “convenient and effective” resolution of the case than if the case was resolved elsewhere. Coupled with the fact that deference should be given to plaintiff Boston Pads’ choice of forum, this court is satisfied that personal jurisdiction can be properly constituted over the defendant in this case.
*557 ORDER
Based on the foregoing, it is hereby ORDERED that TBDGI’s motion to dismiss for lack of personal jurisdiction is DENIED.

 The affidavit of plaintiffs manager states that “contacts” were made to the defendant’s business through emails and calls placed to and from Massachusetts." This statement is not contradicted or disputed. Neither side sought discovery limited to this jurisdictional issue.