Kaplan, Mitchell H., J.
The plaintiff, SCVNGR, Inc., doing business as LevelUp, brings this action against the defendant, Punchh, Inc., one of its competitors. LevelUp complains that Punchh has engaged in a “campaign of [making] knowingly false statements to LevelUp restaurant clients and potential clients,” to the effect that LevelUp does not respect the confidentiality of its restaurant clients’ customer data.
LevelUp’s complaint contains the following five claims: defamation (Count I), commercial disparagement (Count II), intentional interference with prospective business relations (Count III), violation of G.L.c. 93A (Count IV), and violation of Cal. Bus. & Prof. Code §17200 et seq. (Count V). LevelUp seeks monetary damages and injunctive relief to prevent Punchh from continuing to make false and/or defamatory statements concerning LevelUp’s products and services. Punchh filed a motion to dismiss for lack of personal jurisdiction pursuant to Mass.R.Civ.P. 12(b)(2). On May 5, 2016, the court held a hearing on the motion. At hearing, the court ordered Punchh to respond to an interrogatory posed by LevelUp requesting information identifying each occasion in which Punchh made statements to a LevelUp client or potential client similar to those alleged in the complaint. Following Punchh’s response to the interrogatory, the parties submitted supplemental memoranda in support of their respective positions on the motion to dismiss. In consideration of the parties’ memoranda of law, supporting materials, and oral arguments, for the reasons that follow, Punchh’s motion to dismiss is ALLOWED.
BACKGROUND
The following facts, assumed to be true for the purposes of this motion, are taken from the complaint and the supplemental materials submitted by the parties.
LevelUp is a technology company based in Boston, Massachusetts that offers mobile device applications (apps) and related services that enable consumers to earn and redeem rewards in connection with retail purchases and to initiate a payment for a purchase by scanning a quick-response (QR) code that is displayed on a mobile phone at a merchant’s point of sale. LevelUp designs and develops such mobile apps for restaurant businesses and has clients ranging from single-location restaurants to national franchise restaurant chains. LevelUp’s restaurant clients use custom mobile apps to engage with their customers through tailored promotions, incentives, messaging, customer loyalty programs, and other features. LevelUp’s apps and customer resource management services also allow its restaurant clients to gather and analyze information about their customers.
Punchh, a direct competitor of LevelUp with respect to certain services, is engaged in the business of providing mobile apps for restaurant businesses throughout the United States. Punchh is a Delaware corporation with a principal place of business in Mountain View, California. Punchh provides mobile apps for several restaurant chains that operate in Massachusetts, including: Moe’s Southwest Grill (eight locations in Massachusetts), Noodles & Co. (six locations in Massachusetts), Earl of Sandwich (one location in Boston), and Vino Volo (one location in Boston). According to LevelUp, Punchh and a number of its restaurant clients market their Punchh-built mobile apps to consumers in Massachusetts for use at Massachusetts retail business locations. LevelUp also asserts in its complaint that Punchh regularly does and solicits business within Massachusetts and derives substantial revenue from and in connection with the use of Punchh-built mobile apps by its clients in Massachusetts and by Massachusetts residents.[2]
*519 In this action, LevelUp contends that Punchh embarked on a campaign of making knowingly false statements to LevelUp restaurant clients and potential clients in which it asserted that LevelUp does not respect the confidentiality of its restaurant clients’ valuable customer data. LevelUp asserts that Punchh continued to make such statements notwithstanding representations made to LevelUp in December 2015 that Punchh would stop this conduct. LevelUp claims that this was an unfair and deceptive attempt by Punchh to compete with LevelUp’s technology and customer resource management platform.
More specifically, LevelUp alleges that on October 2, 2015, Jitendra Gupta, Punchh’s founder, sent an e-mail to a representative of Veggie Grill, a restaurant chain that had recently signed an agreement with LevelUp, that contained a number of false and disparaging statements. For example, Gupta asserted that LevelUp clients “don’t own their own customer data” and that LevelUp owns all user data by default, even though LevelUp’s professional service agreement expressly provides that, “User Data as collected by Client via the LevelUp platform shall be the property of Client, and Client’s rights in such User Data shall be unlimited.” Gupta’s e-mail went on to state that, “We [Punchh] have spoken to a number of businesses are [sic] they are not aware and shocked that they were sharing user data with LevelUp network and potentially with their competitors.” Further, in January and/or February 2016, a Punchh representative made the following false statements to at least one LevelUp restaurant client and to several potential clients: (1) LevelUp does not grant ownership of its clients’ data to its clients; (2) LevelUp shares confidential client data with a client’s competitor restaurants; and (3) several of LevelUp’s clients have sued LevelUp in an effort to gain access to their confidential data. LevelUp believes that these false statements have caused damage to LevelUp’s business.
On February 19, 2016, LevelUp filed this action in the Superior Court. Punchh filed a motion to dismiss for lack of personal jurisdiction pursuant to Mass.R.Civ.P. 12(b) (2) or, in the alternative, to dismiss this action under the doctrine of forum non conveniens. Punchh argues that this court lacks personal jurisdiction over Punchh because LevelUp’s allegations are entirely unconnected to Massachusetts and because Punchh does not have sufficient minimum contacts with Massachusetts.
Punchh’s motion is supported by the March 10,2016 declaration of Jitendra Gupta, the founder of Punchh. According to Gupta, Punchh is a California-based company that has eighty employees, none of whom are based in Massachusetts. Punchh is incorporated in Delaware and has a principal place of business in Mountain View and no other offices in the United States. Punchh is not a citizen of Massachusetts, is not registered to do business in Massachusetts, and does not own any property in Massachusetts. All of Punchh’s records that are relevant to this dispute are in California. No Punchh employee has travelled to Massachusetts for business. Gupta believes that Veggie Grill has restaurants in California, Washington, and Oregon. The person Gupta emailed at Veggie Grill worked at Veggie Grill’s California headquarters. In addition, none of Protein Bar, Freebirds World Burrito, Moe’s Southwest Grill, Noodles & Co., and Vino Volo are headquartered in Massachusetts, and Punchh’s employees did not communicate with any Massachusetts representatives of those restaurants.
LevelUp filed an opposition to Punchh’s motion to dismiss. It argues, among other things, that this court has specific jurisdiction over Punchh resulting from Punchh’s intentional efforts to cause harm to LevelUp in Massachusetts. LevelUp’s opposition is supported by the affidavit of Andrew Boch, chief operations officer of LevelUp. Boch believes that Punchh markets its apps and services extensively within Massachusetts and to restaurant clients with operating locations in Massachusetts. He also contends that Punchh distributes its mobile apps to Massachusetts consumers, who like all other Punchh customers can download Punchh’s app through the Apple App Store.[3]
On May 5, 2016, the court held a hearing on the motion. At the hearing, the court ordered Punchh to respond to an interrogatory requesting information concerning other businesses to which Punchh had provided information similar to that alleged in the complaint. In response, Punchh identified eighteen companies, including: 16 Handles, 85 Degrees Celsius Bakery Café, Arizona Pizza Management, Chopt, Bridg, Cowboy Chicken, Freebirds World Burrito, Lyfe Kitchen, Noodles & Co., Olo, Parabox, Protein Bar, Roy Rogers, Sweetgreen, Taco Johns, TooJay’s, Veggie Grill, and Vino Volo. Punchh’s response also identified the specific representatives contacted and the location of the headquarters of each company. None of the headquarters of the eighteen companies identified by Punchh are located in Massachusetts.
Following Punchh’s response to the interrogatory, the parties submitted supplemental memoranda. LevelUp’s supplemental brief argues that Punchh’s response to Interrogatory Number One evidences a national campaign to defame LevelUp and harm LevelUp’s Massachusetts and national business and admits fraud directed against LevelUp in Massachusetts in November 2015, because LevelUp represented that it would stop making such statements at that time.
LevelUp also submitted the June 16,2016 affidavit of Justin Schaeffer, vice president of business development at LevelUp. Schaeffer reviewed the list of clients that Punchh identified in its interrogatory response. According to Schaeffer, ten of the eighteen entities that Punchh identified are clients or business partners of LevelUp and several others were prospective clients of LevelUp. Schaeffer also stated in his affidavit that:
Within the past six months, I have been engaged in extensive sales discussions concerning the LevelUp platform and service with a quick-service restaurant chain brand that was also in discussion with *520 Punchh concerning Punchh’s competing service. During my discussions with this prospective client, the prospective client expressed concern about how LevelUp would treat the client’s confidential information concerning its customers, and asked repeatedly about whether the prospective client would “own” that data and have access to the data if its relationship with LevelUp was terminated. In my experience, these types of concerns and questions are only raised by prospective clients that have received false information about the LevelUp platform and service. Based on my discussion with this prospective client, I believe that Punchh made false statements to the entity concerning LevelUp’s practices for protecting the confidentiality of client information, similar to the statements identified in LevelUp’s Complaint. The prospective client ultimately elected to enter an agreement with Punchh. The prospective client to which I am referring in the preceding paragraph is not identified as a recipient of Punchh’s false statements about LevelUp.
Punchh also submitted a supplemental memorandum in support of its motion to dismiss. Punchh argues that it is not subj ect to personal jurisdiction in Massachusetts because none of the allegedly defamatory statements that LevelUp cites in its complaint, or were identified in the interrogatory answer, were made in Massachusetts or directed to a Massachusetts-based business.[4]
DISCUSSION
At issue is whether this court has specific jurisdiction over Punchh. “Many States have enacted longarm statutes authorizing courts to exercise specific jurisdiction over... [defendants] when the events in suit, or some of them, occurred within the forum state.” Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S.Ct. 2846, 2855 (2011). A Massachusetts court may acquire personal jurisdiction over a nonresident defendant when some basis for jurisdiction enumerated in the longarm statute is established. Intech, Inc. v. Triple “C” Marine Salvage, Inc., 444 Mass. 122, 125 (2005). Once jurisdiction is challenged, the plaintiff has the burden of establishing facts to showjurisdiction under G.L.c. 223A, §3. Roberts v. Legendary Marine Sales, 447 Mass. 860, 863 (2006); Tatro v. Manor Care, Inc., 416 Mass. 763, 767 (1994); Droukas v. Divers Training Academy, Inc., 375 Mass. 149, 151 (1978).
The Massachusetts longarm statute provides, in pertinent part:
A [Massachusetts] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person’s (a) transacting any business in this commonwealth; (b) contracting to supply services or things in this commonwealth; (c) causing tortious injury by an act or omission in this commonwealth; [or] (d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth.
G.L.c. 223A, §3. The term ‘person’ is defined in G.L.c. 223A, § 1 to include a corporation. Intech, Inc. v. Triple “C” Marine Salvage, Inc., 444 Mass. at 125. In addition, if the literal requirements of the longarm statute are satisfied, the plaintiff must also show that the exercise of jurisdiction under Massachusetts state law is consistent with basic due process requirements. Good Hope Industries, Inc. v. Ryder Scott Co., 378 Mass. 1, 5-6 (1979).
The constitutional touchstone of the determination whether an exercise of personal jurisdiction comports with due process remains whether the defendant established “minimum contacts” in the forum state . . . The due process analysis entails three requirements. First, minimum contacts must arise from some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws . .. Second, the claim must arise out of or relate to the defendant’s contacts with the forum ... Third, the assertion of jurisdiction over the defendant must not offend traditional notions of fair play and substantial justice.
Bulldog Investors Gen. Partnership v. Secretary of the Commonwealth, 457 Mass. 210, 215 (2010).
LevelUp argues in its memoranda that the Massachusetts longarm statute is satisfied here under G.L.c. 223A, §§3(a), 3(c), and 3(d). It bases its position on Punchh’s intentional efforts to cause harm to Level Up in Massachusetts. Both parties cite extensively from two U.S. Supreme Court cases, Calder v. Jones, 104 S.Ct. 1482, 1486 (1984), and Walden v. Fiore, 134 S.Ct. 1115, 1123-24 (2014), in support of their respective arguments.[5] LevelUp asserts that this case presents “a question identical to that considered in Caldef’ in that “Punchh’s sales staff disseminated a campaign of false statements to business enterprises around the country (including enterprises operating in Massachusetts).” LevelUp’s Memorandum in Opposition at 12. It also asserts that Punchh’s interrogatory answer shows that Punchh engaged in a campaign to target LevelUp nationally and intended that the effects of this campaign would be felt in Massachusetts and that for this reason, specific jurisdiction exists in Massachusetts under Colder and Walden. LevelUp’s Supplemental Memorandum in Opposition at 6.
‘The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation . . . For a State to exercise jurisdiction consistent with due process, the defendant’s suit-related conduct must create a substantial connection with the forum State.” Walden v. Fiore, 134 S.Ct. at 1121 (internal quotation marks omitted). A defendant’s relationship with the forum State must arise out of contacts that the defendant itself creates with the forum State. Id at 1122. This is because “[d]ue process limits on the State’s adjudicative authority principally protect the liberty of *521 the nonresident defendant—not the convenience of plaintiffs or third parties.” Id. See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 417, 104 (1984) (“(The] unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction”). Moreover, “(d]ue process requires that a defendant be haled into court in a forum state based on his own affiliation with the state, not based on the ‘random fortuitous or attenuated contacts’ he makes by interacting with other persons affiliated with the State.” Walden v. Fiore, 134 S.Ct. at 1123, quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985). “A forum States exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum.” Walden v. Fiore, 134 S.Ct. at 1123.
As noted above, LevelUp argues that the facts of this case are very much like those of Colder, which therefore establishes that the requisite jurisdictional nexus with Massachusetts exists here. The Supreme Court, however, decided Walden after Colder, and explained the reason that jurisdiction existed over the defendant in Calderas follows:
In Colder, a California actress brought a libel suit in California state court against a reporter and an editor, both of whom worked for the National Enquirer at its headquarters in Florida. The plaintiffs libel claims were based on an article written and edited by the defendants in Florida for publication in the National Enquirer, a national weekly newspaper with a California circulation of roughly 600,000.
We held that California’s assertion of jurisdiction over the defendants was consistent with due process. Although we recognized that the defendants’ activities “focus[ed]” on the plaintiff; our jurisdictional inquiry “focuse[d] on ‘the relationship among the defendant, the forum, and the litigation.’ ” Id., at 788, 104 S.Ct. 1482 (quoting Shaffer, 433 U.S., at 204, 97 S.Ct. 2569). Specifically, we examined the various contacts the defendants had created with California (and not just with the plaintiff) by writing the allegedly libelous story.
We found those forum contacts to be ample: The defendants relied on phone calls to “California sources” for the information in their article; they wrote the story about the plaintiffs activities in California; they caused reputational injury in California by writing an allegedly libelous article that was widely circulated in the State; and the “brunt” of that injury was suffered by the plaintiff in that State. 465 U.S., at 788-89, 104 S.Ct. 1482. “In sum, California [wa]s the focal point both of the story and of the harm suffered.” Id, at 789, 104 S.Ct. 1482. Jurisdiction over the defendants was “therefore proper in California based on the effects’ of their Florida conduct in California.” Id
The crux of Colder was that the reputation-based “effects” of the alleged libel connected the defendants to California, not just to the plaintiff. The strength of that connection was largely a function of the nature of the libel tort. However scandalous a newspaper article might be, it can lead to a loss of reputation only if communicated to (and read and understood by) third persons. See Restatement (Second) of Torts §577, Comment b (1976); see also id (“[R]eputation is the estimation in which one’s character is held by his neighbors or associates”). Accordingly, the reputatio-nal injury caused by the defendants’ story would not have occurred but for the fact that the defendants wrote an article for publication in California that was read by a large number of California citizens. Indeed, because publication to third persons is a necessary element of libel, see id, §558, the defendants’ intentional tort actually occurred in California. Keeton, 465 U.S., at 777, 104 S.Ct. 1473 (“The tort of libel is generally held to occur wherever the offending material is circulated”). In this way, the “effects” caused by the defendants’ article—i.e., the injury to the plaintiffs reputation in the estimation of the California public— connected the defendants’ conduct to California, not just to a plaintiff who lived there. That connection, combined with the various facts that gave the article a California focus, sufficed to authorize the California court’s exercise of jurisdiction.
Walden v. Fiore, 134 S.Ct. at 1123-24.
With the teaching of Colder and Walden in mind, the court turns to the claims asserted by LevelUp in this case. Punchh has no offices or employees in Massachusetts and does not regularly solicit business in Massachusetts. The complaint alleges that on October 2,2015, Jitendra Gupta, Punchh’s founder, sent an e-mail to a representative of Veggie Grill, a restaurant chain that had recently signed an agreement with LevelUp, that contained a number of false and disparaging statements. However, Gupta avers that he and the representative of Veggie Grill were both in California when the statement was made; LevelUp offers no evidence to dispute this. LevelUp also asserts that other employees of Punchh located in California made false statements about Level-Up to representatives of other entities in other states; however, again there is no suggestion that the representatives of the eighteen entities that allegedly received the false statements were located in Massachusetts. While some of these restaurant chains may have operated restaurants in Massachusetts, or had franchises here, none were a Massachusetts-based business or an entity whose business operations were focused on Massachusetts. If LevelUp suffered injury as a result of these alleged misrepresentations, it was not because some of these entities had a restaurant in Massachusetts.
Rather, the conduct that LevelUp complains about in this action occurred entirely outside of Massachusetts. In Colder, the effects of the false statements damaged the reputation of the plaintiff in the eyes of the public in *522 California because they were about California-based incidents and published in California, where the defendant had a very substantial circulation. See Walden v. Fiore, 134S.Ct. at 1124 (“Accordingly, the reputational injury caused by the defendants’ story would not have occurred but for the fact that the defendants wrote an article for publication in California that was read by a large number of California citizens. Indeed, because publication to third persons is a necessary element of libel, see id., §558, the defendants’ intentional tort actually occurred in California.”). In this case, the false statements at issue were made only to representatives of businesses located outside of Massachusetts. The fact that some of these businesses might do some business in Massachusetts is insufficient to show that the defendant has the requisite contacts with the forum state. The fact that LevelUp is a Massachusetts-based business, and therefore might be said to have suffered its injury in Massachusetts, is not sufficient to connect Punchh’s conduct to Massachusetts and permit a Massachusetts court to exercise jurisdiction over Punchh. See Walden v. Fiore, 134 S.Ct. at 1125 (“The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant’s conduct connects him to the forum in a meaningful way”).
This court’s ruling is consistent with a very recent decision of the Massachusetts Appeals Court, Fletcher Fixed Income Alpha Fund Ltd. v. Grant Thornton LLP, Mass.App.Ct., No. 15-P-830, slip op. at 8-11, 2016 WL 3747489 (July 14, 2016) (“Fletchef j. In Fletcher, the plaintiff, a Massachusetts agency, invested in an investment entity that operated in the Cayman Islands as a feeder fund for a Cayman Islands-based master fund. The defendant, Grant Thorton, performed an audit of the funds in the Cayman Islands and Grant Thorton Cayman Islands, an entity organized under the laws of the Cayman Islands, issued the audit report. The plaintiff asserted a number of claims based on Grant Thorton’s alleged improper auditing and its contention that this negligence caused the plaintiffs loss. However, the audit was performed in the Cayman Islands on Cayman Islands-based entities. Citing Walden, the Appeals Court stated: “As explained in Walden v. Fiore, 134 S.Ct. at 1124-25, a defendant’s actions outside the forum, in that case the State of Nevada, did not create sufficient contacts with the forum ‘simply because he allegedly directed his conduct at plaintiffs whom he knew had Nevada connections.’ ” Fletcher Slip Op. at 10. The Appeals Court later noted that the fact that Grant Thorton knew that the fund administrator “would send the audit reports to Massachusetts was not sufficient contact between Grant Thornton and the forum to establish jurisdiction for purposes of either G.L.c. 223A, §3(a) or (d).” Id at 14.
Similarly in this case, the fact that Punchh was aware that LevelUp was a Massachusetts-based business and therefore that the injury caused by the allegedly false statements concerning the manner in which LevelUp dealt with its customers’ data would be borne in Massachusetts is not a basis for the assertion of personal jurisdiction over Punchh. The fact that some of the third-parties to whom Punchh allegedly made these statements did some business in Massachusetts is not a substitute for evidence that Punchh engaged in conduct or transactions in Massachusetts that gave rise to LevelUp’s claims.[6]
ORDER
For the foregoing reasons, Defendant Punchh, Inc.’s Motion to Dismiss for lack of personal jurisdiction is ALLOWED. Final judgment shall enter dismissing the complaint.

 Notwithstanding this allegation, LevelUp opposes Punchh’s motion on the grounds that the court has specific jurisdiction over Punchh for the claims alleged in the complaint, not general jurisdiction. The record before the court does not support a claim that Massachusetts courts have general jurisdiction over Punchh.

 In 2014, Punchh negotiated and entered into an agreement with LevelUp that would enable Punchh to employ LevelUp’s mobile payment technology in Punchh-built mobile apps. However, Punchh and LevelUp terminated their agreement not long after it went into effect, in September 2014. LevelUp does not contend that the claims asserted in this action arise out of that terminated agreement.

 LevelUp also argues in its supplemental memorandum that Punchh made an inadequate investigation of its communications with LevelUp’s customers and potential customers. Punchh submitted an affidavit of its counsel describing the efforts made to search for evidence of relevant communications. The court concludes that, for purposes of this motion, the search was adequate. There is no evidence of communications with any Massachusetts-based company or individual in Massachusetts.

 While LevelUp asserts that it meets the requirements of §§3(a), (c) and (d) of the Massachusetts longarm statute, it appears to the court that only §3(c) is arguably in play. There is no evidence that LevelUp’s claims arise out of Punchh’s transacting business in Massachusetts, and LevelUp has not pressed a contention that Punchh’s “persistent course of conduct” in Massachusetts is sufficient to establish general jurisdiction. In any event, although typically a Superior Court presented with a Rule 12(b)(2) argument begins with an analysis of whether the requirements of the longarm statute have been met, in this case both parties have focused their arguments on Federal due process considerations as expressed in these two United States Supreme Court decisions. The court has therefore started with the due process test for personal jurisdiction, and having found for Punchh with respect to it, not specifically addressed the longarm statute.

 The court is troubled by the allegations, supported by adequate evidence for the purpose of this jurisdictional motion, that the wrongful, defamatory statements were published in a number of states, although not in Massachusetts. A reasoned argument could be made that where a course of wrongful conduct is perpetrated in a number of geographically disparate states, there comes a point at which the defendant should have subjected itself to the jurisdiction of the home state of the wronged party, even if the defendant has not specifically engaged in the conduct giving rise to the claim in the forum state. Stated differently, there should come a “tipping point” under such circumstances where due process is no longer offended by the assertion of jurisdiction in the home state of the allegedly injured party. The court, however, finds no support for that theory in the relevant, controlling case law.